PEOPLE v. ROBINSON.

1. CRIMINAL LAW—ONE-MAN GRAND JURY—CIRCUIT JUDGE—JURISDICTION OF RECORDER'S COURT.

A circuit judge, acting as a so-called one-man grand jury, has jurisdiction to inquire into crimes occurring in city located within the county notwithstanding recorder's court for such city had been given exclusive jurisdiction of ''all prosecutions and proceedings * * * for crimes * * * committed within the corporate limits of the city'' as proceedings for the discovery of crime are not ''prosecutions and proceedings * * * for crimes'' as such terms are used in statute setting forth jurisdiction of the recorder's court (3 Comp. Laws 1929, §§ 16300, 17217, 17218).

2. COURTS—RECORDER'S COURT—JURISDICTION—WARRANT BY ONE-MAN GRAND JURY.

Warrant issued by circuit judge, acting as a one-man grand jury, was returnable before recorder's court of city, located within the county, which court had exclusive jurisdiction of ''all prosecutions and proceedings * * * for crimes * * * committed within the corporate limits of the city'' and gave such court jurisdiction to proceed (3 Comp. Laws 1929, §§ 16300, 16301, 17217, 17218).

3. WITNESSES—SELF-INCRIMINATION—WAIVER OF IMMUNITY.

The mere fact that one is compelled to testify before a so-called one-man grand jury does not free such person from subsequent prosecution as the privilege against self-incrimination is a personal one and may be waived or asserted at the option of the witness (3 Comp. Laws 1929, §§ 17217, 17218).

4. SAME—ONE-MAN GRAND JURY—SUBSEQUENT PROSECUTION.

One who has been compelled to testify before a so-called one-man grand jury in an investigation directed generally into gambling and kindred offenses and official corruption in the county and who does not appear to have claimed immunity

at any time may properly thereafter be charged with an offense which the investigation may have tended to disclose.

5. SAME—SELF-INCRIMINATION—PRESERVATION OF IMMUNITY.

In order that a witness who is subpoenaed and compelled to testify before a grand jury may obtain immunity from prosecution or not be thereafter subjected to any penalty or forfeiture on account of any matter or thing concerning which he may so testify, it is necessary that he first object to answering any question tending to incriminate him (3 Comp. Laws 1929, § 17215 et seq.).

6. CONSPIRACY—INFERENCES.

A criminal conspiracy may be established by circumstances and may be based on inferences.

7. CRIMINAL LAW—CONSPIRACY TO OBSTRUCT JUSTICE—GAMBLING—HOLDUP—EVIDENCE.

In prosecution for conspiracy to obstruct the administration of justice, evidence that victim of holdup was interested in preventing the prosecution of the alleged holdup men for the purpose of covering up his own gambling connections, that he failed to satisfactorily identify the holdup men, that he put obstructions in the path of an investigation and was connected with the handling of money used in bribing police officers and other testimony *held*, sufficient to submit to jury defendant's connection with the conspiracy.

8. WITNESSES—SELF-INCRIMINATION—IMPEACHMENT.

Coconspirators who were not codefendants with defendant, charged with conspiracy to obstruct justice, who testified as witnesses for the people, were properly upheld by trial court in their refusal to testify on cross-examination on ground that answers might incriminate them on charges of perjury then pending against them and were properly relieved from answering questions asked for purposes of impeachment without proper foundation having been laid.

9. CRIMINAL LAW—DEFENDANT AS WITNESS—WAIVER.

While one accused of crime may not be compelled to testify either on his own behalf or for the people, if he does elect to testify he has waived his constitutional right of refusing to answer any question material to the case even though the answer tends to prove him guilty of some other crime than that for which he is on trial (Const. 1908, art. 2, § 16).

10. WITNESSES—SELF-INCRIMINATION—COCONSPIRATORS.

One who is a coconspirator but is not a codefendant on trial for conspiracy and who becomes a witness for the State either voluntarily or under subpoena may not be thereby required to incriminate himself as to the commission of some other crime and may assert his constitutional privilege against self-incrimination (Const. 1908, art. 2, § 16).

11. CRIMINAL LAW—CROSS-EXAMINATION—REMARKS OF COURT.

Remarks of court after lengthy cross-examination in trial for conspiracy to obstruct justice that counsel had fooled away some time on matters witness had already answered *held,* justified under record presented and not reversible error.

12. SAME—REMARKS OF PROSECUTING ATTORNEY—RECORD.

In prosecution for conspiracy to obstruct justice, claims that prosecuting attorney injected racial prejudice into case by asking appellant's codefendant whether he was a member of a certain gang and that prosecutor used inflammatory and abusive language *held,* without merit under record presented.

13. SAME—PROSECUTOR'S STATEMENT OF BELIEF IN DEFENDANT'S GUILT.

Prosecuting attorney's statement in trial of a criminal case that he believed from the testimony presented that the jury ought to find defendants guilty as charged does not constitute error.

14. SAME—READING INFORMATION IN INTRODUCTORY STATEMENT.

Reading part of information in prosecutor's introductory statement to jury in prosecution of a criminal conspiracy did not constitute error where no objection was made at the time.

15. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE—DISCRETIÓN OF COURT.

Denial of motion for new trial, largely on the ground of newly-discovered evidence, is within the discretion of the trial court.

16. SAME—SECOND MOTION—NEWLY-DISCOVERED EVIDENCE—DISCRETION OF COURT.

Denial of second motion for new trial on leave granted after submission of case on appeal on the ground of newly-discovered evidence did not constitute an abuse of discretion under supplemental record filed by leave of Supreme Court.

WIEST and BUTZEL, JJ., dissenting.

Appeal from Recorder's Court for the City of Detroit; Gordon (Arthur E.), J. Submitted January

14, 1943. (Docket No. 90, Calendar No. 41,472.) Decided June 7, 1943. Rehearing denied September 7, 1943. Certiorari denied by Supreme Court of the United States December 20, 1943.

Martin B. Robinson was convicted of a conspiracy to obstruct justice. Affirmed.

*Anthony Maiullo,* for appellant.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *A. Floyd Blakeslee* and *Daniel J. O'Hara,* Assistants Attorney General, and *Ralph E. Helper,* Assistant Prosecuting Attorney, for the people.

BOYLES, C. J. This is one of a number of cases recently before this court, arising out of offical corruption, gambling, and the administration of justice in Wayne county. Defendant Robinson and another were convicted by a jury in recorder's court of the city of Detroit on an information charging them and others with having conspired to obstruct the administration of justice. On November 13, 1940, Robinson was sentenced to serve 3 to 5 years in State prison, and leave to appeal therefrom was granted by this court, December 10, 1940. The time within which to settle bill of exceptions was extended by stipulation and the appeal reached this court for hearing at the January, 1943, term of this court. People's brief was filed February 17, 1943. During this interval, many of the questions originally relied on for reversal have been determined by this court on other appeals.

At about 11 a. m. on Saturday, July 8, 1939, Inspector Meyers of the Detroit police department, Bethune station, heard a car come up an alley east of Woodward avenue that did not stop at the prev-

ious street crossing. About midway of the alley, the inspector stepped up to the car to ask the occupants why they had not stopped at the street crossing, saw a gun on the back seat of the car, opened the car door, seized the gun and two packages of money lying on the seat, ordered the four occupants out of the car, lined them up and took them to the Bethune police station. The inspector had not yet been informed of any alarm as to a robbery, but as a matter of fact defendant Martin B. Robinson, a doctor, had just been robbed in his office in the Boulevard building, in the city of Detroit, and a considerable amount of money and other property taken. At the Bethune station, the four holdup men were lined up and the packs of money laid on the desk. Less than an hour later, defendant Robinson, with his wife and his secretary, all of whom witnessed the holdup, came into the station, asked for the return of one of the guns, but did not ask the return of any money. A police lieutenant took charge of the money, $1,600, and turned it over to officers Brouillet and Farrish to whom he assigned the case. The four holdup men were booked on charges of robbery armed. The holdup money was in a cigar box. According to testimony of Brouillet and Farrish, they turned $1,000 of the money over to defendant Robinson. There is a dispute as to whether this was done at the request of a superior officer. Brouillet and Farrish changed their official report of the money from $1,600 to $600. There was evidence that Robinson, Brouillet and Farrish got together in a side room at Bethune station, each taking some of the money. There was evidence that Robinson paid Brouillet and Farrish $75 each. Only $600 was turned over to be recorded in the evidence book at police headquarters. Later that afternoon, Brouillet and Farrish talked with de-

fendant Millman and another friend of the holdup men and received $300 to do what they could "to help the boys out." Robinson advised his secretary to become secretive, and police headquarters had difficulty in locating her to identify the holdup men. Robinson gave the police fictitious addresses. Monday night, Brouillet, Farrish, Millman and some friends of the holdup men got together and agreed, that if Dr. Robinson would fail to identify the holdup men, the charges against them would fail or be reduced. One of the men telephoned Robinson. At midnight, Robinson met Brouillet and Farrish at an agreed street corner and there was a conference. The following morning, there was another showup at police headquarters but Robinson and his secretary failed to identify the holdup men. Robinson admitted having a gambling place on Van Dyke. He had obtained work for his secretary in the gambling place in which he was interested. There were further meetings and conferences. The trial of the holdup men for robbery armed resulted in acquittal—Robinson failed to identify any of them. Out of this mix-up, a one-man grand jury investigation was held by Judge Ferguson. As one result, the information in the instant case was filed in recorder's court, charging Samuel Millman, gambler friend of the holdup men, Sidney Sherman, an attorney, Robert J. Peretto, an assistant prosecutor, and defendant Robinson with having conspired among themselves and with others (including Brouillet and Farrish) to obstruct the administration and due course of justice, resulting in the release of the four holdup men. Sherman was later discharged from the information; Peretto waived jury trial, was tried by the court, and discharged; Millman and Robinson were found guilty by the jury. They prosecute separate appeals.

For reversal, defendant relies on the following claims of error:

## "1.

"Does a Wayne circuit judge acting under 3 Comp. Laws 1929, §§ 17217, 17218 (Stat. Ann. §§ 28.943, 28.944), have jurisdiction to inquire into crimes occurring in the city of Detroit and issue warrants with respect thereto?"

## "3.

"Where a warrant is issued by a circuit judge under 3 Comp. Laws 1929, §§ 17217, 17218 (Stat. Ann. §§ 28.943, 28.944), returnable before the recorder's court of the city of Detroit, does such court have jurisdiction to proceed?"

These two questions have now been answered affirmatively by this court in *People* v. *Ewald*, 302 Mich. 31.*

## "2.

"Can a person compelled to testify before a 'one-man grand jury' in an investigation directed against himself be thereafter charged with any offenses which such investigation may have tended to disclose?"

The grand jury investigation was an inquiry directed generally into gambling and kindred offenses, and official corruption, in Wayne County. It was not directed specifically against Robinson. He was called as a witness and the record before us fails to disclose that he at any time claimed immunity. The mere fact that he was compelled to testify before the grand jury does not free him from subsequent prosecution. The privilege against self-incrimina-

---

* See, also, 3 Comp. Laws 1929, §§ 16300, 16301 (Stat. Ann. §§ 27.3561, 27.3562).—REPORTER.

tion is a personal one and may be waived or asserted at the option of the witness.* *People* v. *Smith,* 257 Mich. 319.   As was said in *People, ex rel. Roach,* v. *Carter,* 297 Mich. 577:

"Under defendant's contention, every person who is subpoenaed and testifies before a grand jury in such an investigation would *ipso facto* be immune from prosecution or from subjection to any penalty or forfeiture.   This contention would render nugatory the provisions of chapter 7 of the code of criminal procedure (Act No. 175, Pub. Acts 1927 [3 Comp. Laws 1929, § 17215 *et seq.* (Stat. Ann. § 28.941 *et seq.*)]).   Under the provisions of this chapter, a witness who is subpoenaed and compelled to testify before a grand jury may be granted immunity by the magistrate, but the questions and answers must be reduced to writing and entered upon the journal of the court.   In order to obtain immunity, the witness must object to answering any question tending to incriminate.   The witness can be compelled to answer such questions only upon receiving immunity."

"4.

"Was there sufficient evidence against appellant at the close of the people's case to deny his motion for directed verdict and submit the matter to the jury."

We find in the record credible testimony that the police officers accepted a bribe to "fix" a case involving certain friends of codefendant Millman; that if defendant Robinson should fail to identify certain holdup men, the criminal charge against them would fail; that money changed hands; that Robinson put obstructions in the path of an investigation, was connected with handling the money, received a substantial sum; that he held secret con-

* See Const. 1908, art. 2, § 16.—Reporter.

ferences with wrongdoers who were engaged in gambling enterprises; that Robinson's secretary was an employee of a gambling place. Robinson failed to satisfactorily identify the holdup men, admitted he had been mixed up in the gambling enterprise. The record is replete with testimony from which the legitimate inference might be drawn that Robinson was interested in preventing the prosecution of the alleged holdup men for the purpose of covering up his own gambling connections. Conspiracy may be established by circumstances and may be based on inferences. There was evidence to submit to the jury as to Robinson's connection with the conspiracy. *People* v. *Garska,* 303 Mich. 313.

"5.

"Where a coconspirator has become a witness for the people, can he, after making partial disclosure of the facts, refuse to answer further questions on the ground that they may incriminate him, particularly where such questions relate to facts material to the defense and to the impeachment of this witness as well as other witnesses of the people?"

Brouillet and Farrish were the coconspirators—but not *codefendants* with Robinson. They were not informed against for the conspiracy. Their names were indorsed on the information. The record is not clear whether they were compelled to attend as witnesses, by subpoena, although there was testimony that previously bench warrants had been issued for their appearance. Both were sworn and testified as witnesses for the people. They testified they had returned $1,000 to Robinson. Inspector Meyers, who was the superior officer over Brouillet and Farrish, had testified he gave no orders for the return of the money. Brouillet first denied receiving any orders to return the money. Subsequently, on cross-examination, Brouillet refused to answer

whether Inspector Boettcher asked him to return money to Robinson on the ground it might incriminate him as regards to a perjury charge then pending against him. The trial court upheld the refusal. Farrish was also asked whether he had received any orders from a superior officer to give the money back to Robinson, declined to answer on the ground it would tend to incriminate him in a perjury case then pending against him. The court upheld his right to the claim. Other questions were asked for purposes of impeachment, without laying a proper foundation. Objection was properly sustained as to them. *People* v. *Schaner,* 302 Mich. 6. If Brouillet and Farrish had been joined as defendants, they could not have been compelled to testify. Had Brouillet and Farrish been codefendants with Robinson and voluntarily elected to testify in the trial, they could not have been granted immunity from answering questions that might incriminate them. One who is on trial for a crime cannot be compelled to testify, either on his own behalf or for the people. However, if he elects to do so, he is held to have waived his constitutional right of refusing to answer any question material to the case, even though the answer tends to prove him guilty of some other crime than that for which he is on trial. *People* v. *Dupounce,* 133 Mich. 1 (103 Am. St. Rep. 435, 2 Ann. Cas. 246) ; *People* v. *Gray,* 135 Mich. 542; *People* v. *Koukol,* 262 Mich. 529 (87 A. L. R. 878). But one who is not a codefendant, while he may turn State's evidence and become a voluntary witness on behalf of the State, is not thereby required to incriminate himself as to the commission of some other crime and he may assert his constitutional privilege. Brouillet and Farrish, coconspirators but not codefendants, if found within the jurisdiction of the court could be subpoenaed as witnesses and compelled to testify or subject themselves to commit-

ment for contempt. They should not be compelled to convict themselves of another crime in giving such testimony, or suffer the alternative of jail for refusal to answer incriminating questions.

In *People* v. *Arnold,* 40 Mich. 710, one Sabin, a witness *but not a defendant* in the case, was asked a question, the answer to which would have indicated his guilt of another crime. This court said:

"No doubt the witness might have declined to answer under the acknowledged rule, that no one can be compelled to criminate himself. But this is matter of personal privilege which a witness may waive, and is not a ground of objection by the people, and here the witness did not object, and we cannot assume but that he was not only willing, but desirous to answer."

It must be admitted that in some decisions—*e. g., People* v. *Koukol, supra,* we find language that seems to indicate that any accomplice waives his right to refuse to answer questions that might incriminate himself when called as a witness for the people. But an examination of these decisions discloses that the accomplice witness was a defendant or a joint indictee who voluntarily took the stand as a witness.

See, also, *Alderman* v. *People,* 4 Mich. 414 (69 Am. Dec. 321); *Foster* v. *People,* 18 Mich. 266; *Hamilton* v. *People,* 29 Mich. 173; *People* v. *McCrea,* 303 Mich. 213.

We conclude it was not error to grant Brouillet and Farrish immunity from answering incriminating questions.

Defendant next insists that certain remarks of the court and language of the prosecutor constitute reversible error. At one stage of a lengthy cross-examination, after an objection that the witness had already answered, the court said:

"You have been fooling away for 5 or 10 minutes at that."

Without sanctioning its legal terminology, we must conclude from examining the record there was some justification for the remark. It does not constitute reversible error. We find nothing to give substance to defendant's claim that the prosecutor injected racial prejudice into the case by asking defendant Millman whether he was a member of the purple gang, which was promptly denied by him. Nor has defendant pointed out any specific language used by the prosecutor to support his claim that the prosecutor used inflammatory and abusive language. We find none. Complaint is made that the prosecuting attorney stated that he believed from the testimony the jury ought to find the defendants guilty as charged. This was not error. *People* v. *McElheny,* 221 Mich. 50. The prosecutor in his introductory statement to the jury read part of the information. No objection was made at the time. It was not error. The denial of defendant's motion for a new trial, largely on the ground of newly-discovered evidence, was within the discretion of the court. 1 Gillespie, Michigan Criminal Law & Procedure, pp. 697–699, § 598, and cases cited. We find other minor grounds asserted for reversal equally without merit.

Since this case was submitted, the lower court on leave granted has heard and denied a motion for new trial on the ground of newly-discovered evidence. A supplemental record has been filed by leave of this court. We have considered the same and find no abuse of discretion in denying the motion for new trial.

Conviction and sentence affirmed.

Chandler, North, Starr, Bushnell, and Sharpe, JJ., concurred with Boyles, C. J.

WIEST, J. (*dissenting*). I have read the record and cannot join in the opinion of the Chief Justice.

The motion of defendant Robinson for a directed verdict of not guilty at the close of proofs in behalf of the prosecution should have been granted. The verdict of the jury as to defendant Robinson was not supported by the evidence.

I am well aware of the rule permitting reasonable inferences to be drawn from facts established because of the difficulty of showing by direct evidence the elements of the crime of conspiracy to obstruct justice. Defendant Robinson was charged with the crime of confederating with other named persons to impede and obstruct the due course of justice at the examination and trial of four prisoners, charged with robbery armed upon him, in wilfully not making positive identification of any of the robbers. It appears that about 11 o'clock in the forenoon of July 8, 1939, Robinson, who was a doctor, was robbed in his office in the city of Detroit, and a large amount of money, guns, and other property were taken from him by two holdup men, who were acting in concert with two companions, waiting in an automobile. One of the holdup men entered the office, seized hold of the doctor, made him lie on the floor, taped his ankles together, his arms behind his back and put tape over his mouth, cut the telephone wire, opened the safe and, according to the doctor's testimony, stole about $1,500 in cash. The other holdup man, who entered the office, seized Florence Wolf, the doctor's secretary, and made her lie on the floor. The two robbers then joined their fellows in the waiting automobile and while driving rapidly down an alley were intercepted by a police officer who had no knowledge of the robbery but, in glancing into the car, saw a revolver lying on the rear seat, opened the door of the car and then discovered bundles of currency lying on the seat; took the oc-

cupants to the precinct station where the prisoners were searched and guns found upon their persons and the lieutenant in charge of the station counted the money, found it amounted to $1,600 in cash; turned that sum and the guns over to detectives Byron Farrish and Wilfred Brouillet and placed them in charge of investigating the case. These two detectives were self-confessed scoundrels of the most despicable type and were witnesses for the prosecution. It appears they interviewed the prisoners, obtained the names of some of their friends, hunted them up, obtained $300 from them, under an agreement that they should have $700 more if they could bring about a reduction of the charge of robbery armed to that of carrying concealed weapons.

These detectives claimed they contacted defendant Robinson for the purpose of having him decline to identify the robber who attacked him and join with them in having the offense of robbery armed fail for want of proof of identity of the alleged robbers.

Defendant Robinson a few minutes after the robbery visited the precinct station and asked for the return of one of his guns, stating he had a permit to carry concealed weapons. Return of the gun was refused. At that time defendant did not ask for the return of any of the money, and had he asked it would not have been returned because under the practice it was to be retained by the police officers to be used as evidence at the trial.

The two mentioned detectives turned State's evidence, evidently trying to save their own skins. They testified that at a subsequent visit of defendant Robinson to the precinct station, while one of them was making out a report of the money in custody, stating it to be $1,600, they gave defendant

$1,000, who gave each of them $75, and they changed the figure in the report from $1,600 to $600. When approached by the detectives and asked if he was going to prosecute the robbery armed charge defendant Robinson stated he was not certain.

At the time of the robbery Mrs. Robinson came into the office and noticing what was occurring, promptly fainted.

At a "show-up" of the prisoners defendant Robinson at first was not positive of the identity of the robber who taped him, but later at another "show-up" he identified the robber who taped him, and Miss Wolf identified the robber who compelled her to lie on the floor.

The record is not satisfactory. Complaint was made against the four prisoners, charging them with the crime of robbery armed. An examination was held and they were bound over for trial to the recorder's court. At the examination and also at the trial, defendant did not positively identify the gunman who held him up and the gravamen of the information is that he wilfully and for the purpose of obstructing justice declined positive identification.

Considering the suddenness of the attack by the robbers, the short period of time they were in defendant's office, and what took place, it is not strange that defendant's identification of the robber was not more positive. There was no evidence from which a jury could find that the failure of defendant Robinson to make unqualified identification of the robber who attacked him was wilful or in pursuance of any understanding to thus bring about the acquittal of the alleged robbers. The robbers were acquitted of the charge of robbery armed and this prosecution of defendant Robinson and others, alleged to have combined to bring about the acquittal, followed.

Reasonable inferences may be drawn by a jury, based on the evidence in a conspiracy case, but where in the trial of a criminal conspiracy it is as reasonable to draw the inference of innocence of the accused as it is that of guilt the inference of guilt cannot be entertained.

Conviction should be reversed and defendant Robinson discharged.

BUTZEL, J., concurred with WIEST, J.