VINCENT v RAGLIN

Docket Nos. 52757, 52758. Submitted December 10, 1981, at Detroit.—
Decided March 17, 1982.

Plaintiff, Mack E. Vincent, was pastor of the Greater St. John
Missionary Baptist Church. He was asked by the board of
trustees to resign and refused. The trustees then passed a
resolution to terminate plaintiff's services and gave plaintiff a
copy of the resolution. Plaintiff endeavored to continue conduct-
ing worship services. On the first of two consecutive Sundays
the service was disrupted by a deacon and a trustee. On the
second Sunday the plaintiff was forcibly removed from the
church by security guards and thrown down the church steps.
Plaintiff obtained, in Wayne Circuit Court, a temporary re-
straining order enjoining various trustees and deacons from
interference with plaintiff's leadership of services and access to
the church premises. The trustees changed the locks. A group
of people later met at the church and voted to terminate
plaintiff's services. The circuit judge who had issued the re-
straining order found this vote to be invalid and ordered a new
election to be held, with proper notice to be given to all
members of the church. No such vote was ever taken. Plaintiff
and a small group of his former parishioners later formed a
new church. Plaintiff brought an action against the deacons
and trustees of the church, alleging they had conspired to
deprive him of the economic rewards of his pastorate and
seeking damages, an injunction against further interference, an
accounting and a declaration that he and his followers repre-
sent the true body of the church and are entitled to the church
property. He brought a second action against the security
guard service and its owners and employees seeking damages
for assault, battery and negligence. The two actions were
consolidated for trial. At the close of plaintiff's proofs the
Wayne Circuit Court, Robert J. Colombo, J., granted a directed
verdict in favor of all defendants. Plaintiff appeals. *Held:*

1. The Court is limited to a determination of when, if ever,

REFERENCES FOR POINTS IN HEADNOTES

[1] 66 Am Jur 2d, Religious Societies § 35.
[2] 16 Am Jur 2d, Conspiracy § 10.

the church terminated the plaintiff's duties as pastor. The rules which the church incorporated within its articles of association do not permit the board of trustees to unilaterally dismiss a church pastor. The trustees' resolution in this case was not the action of the church and the plaintiff, therefore, was still pastor when he attempted to conduct the services from which he was ejected. It is not possible, from the record, to determine whether the plaintiff was ever properly discharged by the church membership.

2. There was sufficient evidence from which a jury could have concluded that various trustees, deacons, and others conspired to dismiss the plaintiff by unlawful means.

3. Plaintiff is not entitled to a declaration that he and his followers represent the true body of the church.

4. Plaintiff presented sufficient evidence to warrant a determination by a jury of his claims against the owners and employees of the security guard service.

Reversed and remanded.

1. RELIGIOUS CORPORATIONS AND ASSOCIATIONS — COURTS — JURISDICTION.

A court has constitutional limitations on its jurisdiction over church controversies; where the question is whether a person claiming to be a church's pastor should be excluded from use of the church property, the court should consider only whether the church has ordered his exclusion, not whether it was right in so doing, and should not undertake to determine whether the resolution directing the exclusion was passed in accordance with the canon law of the church except insofar as it is necessary to do so in order to determine whether it was, in fact, the church that acted.

2. CONSPIRACY — PROOF OF AGREEMENT.

The gist of the offense of conspiracy lies in the unlawful agreement between two or more persons; direct proof of agreement is not required nor is it necessary that a formal agreement be proven; it is sufficient if the circumstances, acts, and conduct of the parties establish an agreement in fact.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *David L. Nelson, A. Albert Sugar* and *Richard D. Toth),* for plaintiff.

*Law Offices of Seth H. Barsky, P.C.* (by *Deborah*

*A. Johnston),* for defendant North End Patrol Service, its officers and employees.

*Clarence M. Bradfield,* for defendant officers of Greater St. John Missionary Baptist Church.

Before: D. C. RILEY, P.J., and R. M. MAHER and CYNAR, JJ.

R. M. MAHER, J. Plaintiff appeals by right the trial court's grant of a directed verdict in favor of all defendants.

Plaintiff was the pastor of the Greater St. John Missionary Baptist Church for more than 17 years, from 1958 to 1975. In 1975, a rift developed in the church. The board of trustees asked plaintiff to resign, and he refused. The trustees then proceeded to pass a resolution to terminate plaintiff's duties as pastor. On December 19, 1975, plaintiff received a copy of the resolution, along with a notice of hearing setting a date—December 28, 1975—for a vote on the resolution by the church membership. The hearing date was subsequently changed to January 11, 1976.

In the meantime, plaintiff endeavored to continue conducting services. On December 21, 1975, in the middle of the service, a woman came to the front of the church and announced that plaintiff had been fired and was no longer the pastor of the church. A deacon and a trustee—both later named as defendants—then proceeded to disrupt the services, shouting that there would be no sermon that day. Plaintiff ended the service.

On December 28, 1975, plaintiff returned to the church to conduct services. Approximately 65 to 70 people were present, including four security guards: defendants John Raglin, James Goodman, Salome Williams, and Melvin Timmons (a supervi-

sor). When plaintiff stood up to begin the service he noticed Raglin and Goodman approaching him. Timmons told plaintiff that he had better leave. Raglin and Goodman, who were armed with nightsticks, then proceeded to forcibly remove plaintiff from his chair. They dragged him down the aisle and used his body to force open a set of doors at the back entrance to the church. Then, after escorting him through a second set of doors, Raglin and Goodman proceeded to throw plaintiff down the church steps. Plaintiff hit his head on the last step.

Plaintiff then obtained a temporary restraining order enjoining various trustees and deacons from interference with his relationship to the church: *i.e.,* his leadership of services and his access to the church premises. The trustees, apparently ignoring the order, changed the locks, thus denying plaintiff access to the church.

On January 11, 1976, a group of people met in the church and voted, 80 to 39, to terminate plaintiff's duties as pastor. However, the circuit judge who issued the restraining order found this vote invalid, citing failure to properly notify the church membership. He ordered a new election to be held on February 2, 1976, and stipulated that each church member was to be notified of the meeting by certified mail. Pleading poverty, the trustees refused to do so. They made no effort to notify the church membership by regular mail either, and no further vote was ever taken. Plaintiff eventually banded together with 35 or 40 of his old parishioners and formed a new church.

Plaintiff filed suit against the deacons and trustees of the church, alleging that they had unlawfully conspired to deprive him of the economic rewards of his pastorate, and praying for damages,

an injunction against further interference, an accounting, and a declaration that plaintiff and his followers represent the true body of the church and are thus entitled to possession and control of the church property. Plaintiff filed a separate suit against the security guard service and its owners and employees, seeking damages for assault, battery, and negligence. The two cases were consolidated for trial.

At the close of plaintiff's proofs, the defendants moved for a directed verdict. The trial court granted the motion, ruling (1) that "the doctrine of separation of church and state" proscribed judicial review of plaintiff's claims; (2) that the church had ordered plaintiff's dismissal; (3) that plaintiff was a trespasser when he was forcibly ejected from the church; (4) that, as a matter of law, the security service had not employed unreasonable force in ejecting plaintiff; (5) that plaintiff had not presented sufficient evidence that he had suffered injury in the process of ejection from the church; and (6) that there was insufficient evidence of a conspiracy or of a malicious intention to inflict harm upon plaintiff. We reverse.

We are well aware of the constitutional limitations on a civil court's jurisdiction over church controversies. In *Berry v Bruce,* 317 Mich 490, 501; 27 NW2d 67 (1947), the Supreme Court reaffirmed the vitality of the following passage from *Borgman v Bultema,* 213 Mich 684, 703; 182 NW 91 (1921):

" 'The civil courts will not enter into a consideration of church doctrine or church discipline, nor will they inquire into the regularity of the proceedings of the church judicatories having cognizance of such matters. To assume such jurisdiction would not only be an attempt by the civil courts to deal with matters of which they have no special knowledge, but it would be

inconsistent with complete religious liberty untrammeled by State authority. On this principle the action of the church authorities in the deposition of pastors and the expulsion of members is final. Where, however, a church controversy involves rights growing out of a contract recognized by the civil law; or the right to the possession of property, civil tribunals cannot avoid adjudicating these rights under the law of the land, having in view, nevertheless, the implied obligations imputed to those parties to the controversy who have voluntarily submitted themselves to the authority of the church by connecting themselves with it. *Therefore, where it is admitted, as in this case, that property belongs to a particular church, and the only question is whether the defendant claiming to be pastor should be excluded from its use, this court will only consider whether the church has ordered his exclusion, not whether it was right in so doing.* Neither will the court as a civil tribunal undertake to determine whether the resolution directing exclusion was passed in accordance with the canon law of the church, *except in so far as it may be necessary to do so in determining whether it was, in fact, the church that acted.'* " (Emphasis supplied.)

Hence, it is the duty of this Court to determine when, *if ever,* the church terminated plaintiff's duties as pastor.

The trial court noted that there was no written contract between plaintiff and the church. The absence of a written contract is completely immaterial; the conduct of the parties clearly indicates an agreement to retain plaintiff as pastor until his dismissal by the church.

The church's articles of association provide that "[t]he members of [the] church * * * shall worship and labor together according to the discipline, rules and usage of the Hiscox manuel *[sic]* * * * as from time to time authorized and declared by the Missionary Baptist Church". It is therefore necessary to determine whether, under the Hiscox man-

ual, the board of trustees' purported dismissal of plaintiff was the "action of the church".

Clearly, the Hiscox manual does not permit the board of trustees of a church to effect a unilateral dismissal of the church pastor. Under the Hiscox manual, dismissal of a pastor is the exclusive prerogative of the church membership.[1] Every member of the church must be duly notified of any meeting called for such a purpose and the pastor may not be dismissed except upon a majority vote of those present. We find that the board of trustees' resolution to dismiss plaintiff was not the action of the church, and that, therefore, plaintiff was still pastor of the church when he attempted to conduct services on December 28, 1975.

---

[1] The following excerpts from the Hiscox manual [E. T. Hiscox, *The New Directory for Baptist Churches* (Kregel Publications, 1974)], 208-213, show that only the church membership may discharge the pastor:

"1. As in all other cases, it must be accepted that Baptist Councils are *advisory* only, and never authoritative.

\* \* \*

"4. A Council, having no ecclesiastical authority, cannot be called to *try,* and, if found guilty, to *depose* a minister. Judicial acts belong to a Church, and not to a Council; nor can a Church transfer its authority for the exercise of judicial functions to any other body.

\* \* \*

"8. After the investigation has closed, and the Council rendered its opinion and advice, the Church will take such action as, in view of all the facts, may be deemed wise and right. \* \* \* The responsibility of the final action lies with the Church.

\* \* \*

"9. The final action of a Church, as to an accused minister, may take any one of the following forms: \* \* \*

"c. That of a *withdrawal of fellowship* from him as a *minister* of the Gospel, with a declaration, that in their opinion he is unworthy of, and unfit to continue in, the ministerial office.

\* \* \*

"To the above-named acts a Council may advise; but the acts themselves, to be valid and of any force, must be the acts of the Church and not of the Council. It would be an impertinent assumption for a Council to attempt such an exercise of ecclesiastical authority."

Defendant-trustee Bronson Shuler testified that the church never operated under the Hiscox manual; rather, according to Shuler, the church was governed much more informally. In reliance on this self-serving testimony, the trial court concluded that the resolution of the board of trustees was the action of the church.[2] We find ourselves somewhat perplexed by the significance accorded by the trial court to this testimony. The church's articles of association defined the scope of the board of trustees' authority; usurpation of power by the board over a period of years is not rendered excusable merely by virtue of the fact that the board's actions had never proved sufficiently objectionable to spark a lawsuit.

We are unable to determine from the present record whether plaintiff was *ever* properly discharged by the church membership. The record indicates that nonmembers of the church may have participated in the January 11, 1976, vote, and that certain members of the church may not have been notified of the vote. Therefore, on remand, it will be the duty of the jury to determine whether or not the January 11, 1976, vote was an action of the church. The jury may be guided in its determination by evidence bearing on the following issues: (1) whether the trustees made reason-

---

[2] In the course of granting the motion for a directed verdict, the trial court made the following statement:

"This church was incorporated originally under the laws of the State of Michigan on October the 16th, 1956 and under the articles of association as an ecclesiastical corporation to engage in religious worship. The papers indicated that they would be bound by the Hiscox Rules of Procedure.

"In truth and fact however this church has never operated in accordance with those rules and guidance and in fact was operated by its deacons and trustees in an informal and loose manner in accordance with the education and basic religious ideas that these common working type people had in relation to what they knew about operating an ecclesiastical corporation."

able efforts to notify the church membership of the January 11 meeting; and (2) whether, and if so to what extent, nonmembers participated in the voting.

We also disagree with the trial court's determination that there was no evidence of a conspiracy among the trustees and deacons against plaintiff. The trial court felt that plaintiff had not presented sufficient evidence that the trustees knew they were acting unlawfully. We must disagree. The trustees called for a vote by the church membership, thus indicating that they were aware that they had no authority to effect a unilateral dismissal of the pastor. Moreover, there was substantial circumstantial evidence of an agreement among the trustees. According to *People v Atley,* 392 Mich 298, 311; 220 NW2d 465 (1974),

"[t]he gist of the offense of conspiracy lies in the unlawful agreement between two or more persons. *People v Smith,* 296 Mich 176; 295 NW 605 (1941); *People v Asta,* 337 Mich 590, 611; 60 NW2d 472 (1953). Direct proof of agreement is not required, nor is it necessary that a formal agreement be proven. It is sufficient if the circumstances, acts, and conduct of the parties establish an agreement in fact. [1] Wharton [Criminal Law & Procedure], *supra,* 178-179.

"Furthermore, conspiracy may be established, and frequently is established by circumstantial evidence, *People v Pitcher,* 15 Mich 397, 403 (1867), and may be based on inference. *People v Robinson,* 306 Mich 167, 175; 10 NW2d 817 (1943); see also *People v Huey,* 345 Mich 120, 127; 75 NW2d 893 (1956)."

See also *People v Taurianen,* 102 Mich App 17, 31; 300 NW2d 720 (1980).

It can reasonably be inferred that the trustees were aware that they did not have the authority to dismiss the pastor. Moreover, the trustees dem-

onstrated a persistent disregard of court orders requiring them to accord appropriate deference to plaintiff's rights. A jury could reasonably infer that defendant-trustee Rafe Evans, acting on behalf of the deacons and trustees, hired a security service to wrongfully remove plaintiff from his church. We find that there was sufficient evidence from which a jury could reasonably conclude that various trustees, deacons, and other members of the church had conspired to accomplish a lawful purpose (dismissal of the pastor) by unlawful means.

In light of the above conclusions, we must address the validity of each of plaintiff's requests for relief. First, plaintiff seeks an injunction prohibiting the trustees and deacons from interfering with his pastorate over the church. If the jury finds that the January 11, 1976, vote was not an act of the church, then plaintiff is entitled to an injunction forbidding the defendants from interfering with his pastorate until and unless he is properly dismissed by a majority vote of the church membership.

Second, plaintiff seeks damages arising out of an alleged conspiracy against him by the deacons and trustees. If plaintiff can establish to the jury's satisfaction the existence of such a conspiracy, he is entitled to recover damages on this basis.

Third, plaintiff seeks an accounting by the trustees of the church funds. We wish to express no opinion on the validity of this claim; on remand, the trial court may consider the merits of this claim in light of our previous conclusions.

Fourth, plaintiff seeks a declaration that he and his followers represent the true body of the church and are therefore entitled to the church property. Plaintiff is not suing on behalf of his followers; the

"minority faction" is not a party to this case. Hence, plaintiff is not entitled to such a declaration. See *Colin v Iancu,* 82 Mich App 521; 267 NW2d 438 (1978).

Fifth, plaintiff seeks damages against the owners and employees of the guard service for assault and battery and negligent infliction of injury. Since plaintiff was still pastor of the church on December 28, 1975, he was not a trespasser when he was forcibly removed by the guard service. Moreover, contrary to the trial court's conclusion, plaintiff's testimony constituted sufficient evidence for a jury reasonably to conclude that plaintiff sustained injury in the process of ejection from the church. Manifestly, plaintiff has presented sufficient evidence to warrant a determination of his claims against the owners and employees of the guard service by the factfinder.

The trial court, concluding that plaintiff had been a trespasser on December 28, 1975, ruled that, as a matter of law, the guard service had not employed unreasonable force in ejecting him from the church. We must disagree. Clearly, a jury would be entitled to conclude that it was not reasonable to throw plaintiff down the steps of his church.

We wish to emphasize, once again, that a controversy involving a church is not immune from judicial review unless adjudication of the controversy would require an assessment of the propriety of an action by the church. We have heard Pastor Vincent's prayers for relief, and believe that he is entitled to present his case to a jury.

Reversed and remanded for further proceedings consistent with this opinion. Appellant may tax costs.