THE PEOPLE *ex rel.* JABIR MUHAMMAD, Plaintiff-Appellant, v. SAFIYYA MUHAMMAD-RAHMAH *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—96—1665

Opinion filed June 27, 1997.

Timothy M. Nolan, of Nolan Law Office, of Chicago, for appellant.

Bruce J. Van Heukelem, of Hoogendoorn, Talbot, Davids, Godfrey & Milligan, of Chicago, for appellees.

JUSTICE ZWICK delivered the opinion of the court:

Plaintiff sought leave to file an action sounding in *quo warranto*, alleging that defendants had improperly assumed directorships and cor-

porate offices of the Muhammad Islamic Corporation and had acted without authority in removing plaintiff as president and chairman of the board of directors of the corporation. Upon defendants' motion, the trial court denied plaintiff's request to bring suit, finding that resolution of plaintiff's claims required the court to interpret Islamic religious doctrine. Plaintiff has appealed, contending that the court abused its discretion in denying him leave to bring suit because his claims could properly be resolved by application of "neutral principles of law."

In his petition for leave to file an action sounding in *quo warranto*, plaintiff alleged the following relevant facts.

The Muhammad Islamic Corporation (hereinafter the corporation) was originally established in 1978 and was subsequently incorporated under the General Not For Profit Corporation Act of 1986. 805 ILCS 105/101.01 *et seq.* (West 1996).[1] The purpose of the organization was to promote and further the Islamic faith in the Chicago area. The corporation operated an Islamic mosque, which was the principal corporate asset.

Plaintiff Jabir Muhammad served as the corporation's president and chairman of the board of directors since it was originally organized in 1978. The other members of the corporation's board of directors were Dr. Samella B. Abdullah, Mr. John Glenn Omar and Dr. Tasneema Ghazi. Defendants were not legitimately appointed directors or officers of the corporation, although defendant Safiyya Muhammad-Rahmah, plaintiff's daughter, had on occasion served as secretary for the corporation in addition to serving as plaintiff's personal assistant and secretary.

The corporate bylaws specifically provide that the affairs of the corporation shall be managed by the board of directors. Directors are chosen by majority vote of existing directors from among the mosque members, and the act of a majority of those directors present at a meeting at which a quorum is present shall be the act of the board of directors. A quorum requires the presence of two or more directors, at least one of whom shall be the president or a prayer leader. The corporate bylaws also set forth the notice requirements for a special meeting, which mandate that written or actual oral notice of the time and place of any special meeting of the board of directors shall be given at least two days prior thereto. The members of the corporation are not entitled to vote on directors.

■ The General Not For Profit Corporation Act provides that "a

---

[1]Although the mosque was originally incorporated under the name "Jabir Muhammad Mosque," its name was subsequently changed to "Muhammad Islamic Corporation."

director may be removed by the affirmative vote of a majority of the directors then in office present and voting at a meeting of the board of directors at which a quorum is present." 805 ILCS 105/108.35(b) (West 1994). Notice of a meeting whose purpose is to remove a director requires written notice of the proposed removal be delivered to all directors at least 20 days prior to such meeting. 805 ILCS 105/108.25 (West 1994).

On or about January 19, 1995, defendants Safiyya Muhammad-Rahmah, Omar Muhammad and Mulazim Rahmah, plaintiff's daughter, son and son-in-law, respectively, ostensibly held a meeting of the corporation, removed plaintiff as president and chairman of the board of directors, and installed themselves as directors and officers of the corporation. Mulazim Rahmah was installed as president, Omar Muhammad as treasurer, and Safiyya Muhammad-Rahmah as secretary.

The January 19, 1995, meeting was not called by plaintiff or by the other directors. Directors Abdullah and Omar did not receive written notice of the January 19, 1995, meeting, and they were not in attendance. Plaintiff received a telephone call on the night of January 19, 1995, shortly before the meeting, requesting his presence at a "family gathering," but he declined to attend due to ill health.

As a result of defendants' actions, they obtained exclusive control of the corporation's Islamic mosque and closed the mosque to the members of the local Islamic community, including plaintiff, effectively denying them the opportunity to worship.

Plaintiff claimed the actions of defendants were invalid and sought leave to file the instant *quo warranto* action, challenging their right to hold corporate offices and directorships.

Defendants filed a motion to dismiss plaintiff's petition, asserting that the court was precluded from adjudicating the matter. Defendants characterized the dispute as a question of religious doctrine and contended that plaintiff had been removed as president and chairman of the board of directors of the corporation "because he was no longer living according to Islamic religious tenets." In support of this contention, defendants referred to a written document entitled "The Top Islamic Agreement Commitment for the Cause of Allah (SWT)." This document[2], which was prepared almost four years after adoption of the corporate bylaws, included a provision that stated as follows:

[2]We note that "The Top Islamic Agreement Commitment for the Cause of Allah (SWT)" is drafted upon letterhead bearing the name "Muhammad Islamic Foundation," that appears to be an organization that is separate and distinct from the corporation involved here, but the address is the same for both organizations.

"5. If the President and any member of the Board breaks any of the rules that have been thus far been [*sic*] mentioned; and if [the] President and the members of the Board is [*sic*] found to be in violation of the rules of the Muhammad Islamic Foundation which are based upon the Holy Qur'an and the Sunnah of Prophet Muhammad (SAW) or if he is found trying to lead the Foundation and Corporation on an [*sic*] non-Islamic path—then any member of the Board or Corporation shall be allowed to call for the termination of his position as President or as a member of the Board."

The trial court granted defendants' motion and dismissed plaintiff's petition, finding that resolution of the claims asserted in the petition required interpretation of the Holy Qur'an and Islamic religious doctrine. On appeal, plaintiff argues that the dismissal order constituted an abuse of the court's discretion because his claims could properly be resolved by application of "neutral principles of law."

■ The state has a legitimate interest in providing a forum for the peaceful resolution of internal church disputes that are concerned with control or ownership of church property, and civil courts have general authority to resolve such controversies. *Jones v. Wolf*, 443 U.S. 595, 602, 61 L. Ed. 2d 775, 784, 99 S. Ct. 3020, 3025 (1979). Courts must defer to the resolution reached by the church's highest ecclesiastical authority on questions of religious doctrine, faith or polity. *Jones*, 443 U.S. at 604, 61 L. Ed. 2d at 785, 99 S. Ct. at 3026; *Watson v. Jones*, 80 U.S. (13 Wall.) 679, 727, 20 L. Ed. 666, 676 (1872); *Lowe v. First Presbyterian Church*, 56 Ill. 2d 404, 415, 308 N.E.2d 801 (1974). However, where the court can resolve the dispute according to "[n]eutral principles of law," without invading ecclesiastical doctrine, mandatory deference is not required. *Jones*, 443 U.S. at 603, 61 L. Ed. 2d at 784, 99 S. Ct. at 3025; *St. Mark Coptic Orthodox Church v. Tanios*, 213 Ill. App. 3d 700, 713, 572 N.E.2d 283 (1991); *York v. First Presbyterian Church*, 130 Ill. App. 3d 611, 617, 474 N.E.2d 716 (1984). Under the neutral-principles approach, the court objectively examines pertinent church charters, constitutions and bylaws, deeds, state statutes, and other evidence to resolve the matter the same as it would a secular dispute. *Jones*, 443 U.S. at 603, 61 L. Ed. 2d at 784-85, 99 S. Ct. at 3025; *Clay v. Illinois District Council of the Assemblies of God Church*, 275 Ill. App. 3d 971, 976-77, 657 N.E.2d 688 (1995); *Tanios*, 213 Ill. App. 3d at 714; *York*, 130 Ill. App. 3d at 618.

■ In the case at bar, the court was not required to examine

religious doctrine or practice to determine whether plaintiff had been properly removed as president and chairman of the board of directors of the corporation. The corporation's bylaws and the statute under which it was organized clearly set forth the procedure for appointment and removal of directors, the notice requirements for directors' meetings, and other attendant corporate matters. These instruments constituted the rules that the members of the mosque chose to be bound by before the dispute arose. The allegations in plaintiff's petition required the court to decide only whether those procedures had been complied with and not whether the plaintiff was living as a good Muslim. Thus, the trial court was not required to interpret the Holy Qur'an or to rule on an ecclesiastical question.

Our decision is unaffected by defendants' reliance upon the terms of "The Top Islamic Agreement Commitment for the Cause of Allah (SWT)," which provided that any member of the board or corporation was entitled to call for the termination of the term of the president or a member of the board if found to be in violation of the rules of the Muhammad Islamic Foundation or is found trying to lead the foundation and corporation on a non-Islamic path.

Although this agreement, which is purportedly signed by plaintiff, specified particular reasons why a president's or director's term might be terminated, it did not alter the procedural mechanisms that defined how such official action was to be taken. The fact that a member of the corporation can "call for the termination" of the term of the president or a member of the board does not dispense with the necessity of a majority vote by the existing directors, nor does it relieve them of the obligation to provide proper notice to the directors that such a vote would be called. Those procedures, which are precisely delineated in the corporate bylaws, must be adhered to regardless of the reason for or manner of calling for a vote to terminate the term of the president or member of the board of directors.

Accordingly, we hold that the trial court should have utilized the "neutral principles of law" analysis in ruling on plaintiff's petition, requiring only the application of objective legal principles to the corporation's governing documents and the interpretation of the General Not For Profit Corporation Act, without reference to or reliance upon Islamic religious doctrine. This analysis would have enabled the court to resolve the secular question of whether defendants had complied with the procedural requirements for removal of the plaintiff as president and chairman of the board of directors of the Muhammad Islamic Corporation.

■ The decision to grant or deny a petition for leave to file a *quo*

*warranto* action is a matter within the trial court's sound discretion. *People ex rel. Hansen v. Phelan*, 158 Ill. 2d 445, 449, 634 N.E.2d 739 (1994). In the exercise of its discretion, the court should consider all of the conditions and circumstances in the case, the motives of the relators in instituting the proceedings, the policy of and necessity for the remedy sought, and whether the public interest will be served or damaged by the writ. *People ex rel. Hansen*, 158 Ill. 2d at 449.

In light of our decision, we conclude that the cause must be remanded and that the trial court must apply neutral principles of law and consider the above factors when deciding whether plaintiff should be granted leave to pursue his *quo warranto* claim.

■ Finally, we consider defendants' motion to strike portions of plaintiff's reply brief, which was taken with the case. Defendants note that plaintiff referred to a transcript of proceedings in an unrelated case, which was not included in the record on appeal. Inclusion of this argument and transcript was improper, and defendants' motion to strike is granted. See *In re Estate of Marks*, 231 Ill. App. 3d 313, 320, 595 N.E.2d 717 (1992). Although we do not condone a party's disregard for the supreme court rules, we do not find that this is an appropriate case for imposition of sanctions. Accordingly, defendants' motion for sanctions is denied.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed, and the cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

THEIS and QUINN, JJ., concur.