RUBIN ERVIN, Plaintiff-Appellant, v. LILYDALE PROGRESSIVE
MISSIONARY BAPTIST CHURCH, Defendant-Appellee.

First District (1st Division)   No. 1—03—1594

Opinion filed July 12, 2004.

W. Anthony Walker, of Chicago, for appellant.

Claude B. Kahn, of Chicago, for appellee.

JUSTICE McNULTY delivered the opinion of the court:

This appeal arises from a simple set of undisputed facts. In 2003, a church's board members voted to remove a pastor from his pastoral

duties. The church's bylaws provided that the congregation could vote to terminate a pastor's service, and no provision permitted the board to terminate a pastor's service without a vote of the church's members. The pastor sued for an injunction to prevent the church from terminating his service as pastor without such a vote. The church responded that the employee handbook and the church covenant gave the board the power to remove the pastor. After a trial, the court refused to interfere with the church's ecclesiastical decision to terminate the pastor's service. The judge dismissed the complaint.

On appeal the pastor contends that the trial court could determine whether the proper church authority made the decision to terminate the pastor's service without deciding matters of religious doctrine. We agree and therefore we reverse the judgment and remand for further proceedings.

## BACKGROUND

The bylaws of Lilydale Progressive Baptist Church (Lilydale) provide:

> "Upon recommendation by the Joint Boards of the Church, the Pastor's service may be terminated by a vote of two-thirds of the members present and qualified to vote."

Reverend Rubin Ervin served as Lilydale's pastor. Lilydale's joint boards moved to declare the pulpit vacant at two separate meetings in 2002. Both times fewer than two-thirds of the congregation voted to remove the pastor. In March 2003 the joint boards in a special meeting voted to dismiss Reverend Ervin from his pastoral service at Lilydale. The boards did not submit the issue to a vote of the general membership.

After the meeting, the joint boards sent Reverend Ervin a letter to inform him that it terminated his employment. The following Sunday, Reverend Ervin returned to the church to conduct Sunday service. Members of the boards called the Chicago police department. The police attempted to remove Reverend Ervin from the church during the service.

Reverend Ervin sued to enjoin the church from terminating his service as pastor without following the procedures established by the bylaws. The joint boards responded that Reverend Ervin engaged in church activities while under the influence of alcohol, in violation of Lilydale's employee handbook. The boards claimed that the handbook and the church covenant gave them the power to terminate the pastor's service. In the covenant the church members "engage to watch over, to pray for, to exhort and stir up each other to every good word and work; to guard each other's reputation, not needlessly exposing the infirmities of others."

At trial, various members of Lilydale testified that they saw Reverend Ervin, apparently under the influence of alcohol, at various church functions. The trial judge said that although the handbook states that the church can terminate the employment of an employee, including Reverend Ervin, for alcohol use, "there's a provision in the by-laws [*sic*] that states that if you're going to terminate [the pastor], you do it a certain way. *** [T]he handbook and bylaws are not contradictory." However, the trial court found that the joint boards made an ecclesiastical decision to remove Reverend Ervin from his pastoral service, and therefore the court refused to exercise jurisdiction to resolve Reverend Ervin's claims. The court dismissed the complaint. This appeal followed.

## ANALYSIS

We must decide whether the exercise of jurisdiction to decide the dispute between the parties would violate the first and fourteenth amendments to the United States Constitution. We review this legal issue *de novo. Cleeland v. Gilbert*, 334 Ill. App. 3d 297, 300 (2002); *Keller v. Walker*, 319 Ill. App. 3d 67, 70 (2001).

■ Under the first and fourteenth amendments, state courts must not decide matters of religious doctrine. *Amato v. Greenquist*, 287 Ill. App. 3d 921, 926 (1997). But a court may resolve a dispute that arises within a church if the dispute does not require determination of any doctrinal issue. *Bivin v. Wright*, 275 Ill. App. 3d 899, 903 (1995). Civil courts may apply neutral legal principles "to interpret provisions of religious documents involving *** nondoctrinal matters, to the extent that the analysis can be done in purely secular terms." *Abrams v. Watchtower Bible & Tract Society of New York, Inc.*, 306 Ill. App. 3d 1006, 1011 (1999); see also *People ex rel. Muhammad v. Muhammad-Rahmah*, 289 Ill. App. 3d 740, 744 (1997).

In *Muhammad*, a corporation organized to promote the Islamic faith operated a mosque. Some members of the corporation's board of directors voted to remove its president. *Muhammad*, 289 Ill. App. 3d at 742. The corporation's bylaws required notice to all directors and a majority vote of the directors for removal of a president. *Muhammad*, 289 Ill. App. 3d at 745. The board members who voted to remove the president characterized the removal as an issue of religious doctrine, and they relied on a written document entitled " 'The Top Islamic Agreement Commitment for the Cause of Allah (SWT).' " *Muhammad*, 289 Ill. App. 3d at 743. According to the agreement, any member of the board could call for the termination of the service of a president if the president had violated church rules. The board members alleged that the president had violated such rules. *Muhammad*, 289 Ill. App.

3d at 743-44. The court found that the agreement set forth reasons for termination, but it did not conflict with the removal procedure established in the bylaws. *Muhammad*, 289 Ill. App. 3d at 745. The agreement did not give the board members the power to terminate the service of the president without following the established termination procedures.

The *Muhammad* decision persuades us to reject Lilydale's argument that the employee handbook and the church covenant gave the joint boards the power to terminate Reverend Ervin's service as pastor without submitting the issue to a vote of church members. The employee handbook establishes an alcohol-free policy and states that the church may dismiss any employee who engages in church activities while under the influence of alcohol. As the trial court observed, the handbook does not specify procedures for termination. The covenant declares broad principles fundamental to the church, but it does not offer a remedy for a pastor's violation of church rules. The trial court correctly found that neither the handbook nor the covenant contradicts the bylaws. Like the bylaws in *Muhammad*, Lilydale's bylaws establish the procedure for removal of the pastor. Although the handbook specifies reasons for terminating a pastor's employment, neither the handbook nor the covenant allows the joint boards to avoid the removal procedure established in the bylaws.

■ Courts in other jurisdictions have held that civil courts can decide whether the proper church authority terminated a pastor. *E.g.*, *Tibbs v. Kendrick*, 93 Ohio App. 3d 35, 42, 637 N.E.2d 397, 402 (1994); *Williams v. Wilson*, 349 S.C. 336, 563 S.E.2d 320 (2002). These cases often involve a question of whether the proper authority, in a congregational polity, made the decision at issue. The United States Supreme Court has defined a congregational polity as a church that is "governed solely within itself, either by a majority of its members or by such other local organism." *Watson v. Jones*, 80 U.S. (13 Wall.) 679, 724, 20 L. Ed. 666, 675 (1872). The parties admit that Lilydale is a congregational polity.

The Michigan Court of Appeals dealt with a factually similar case when it decided *Vincent v. Raglin*, 114 Mich. App. 242, 318 N.W.2d 629 (1981). In *Vincent*, the plaintiff served as the pastor of a Baptist church for nearly two decades. After issues arose between the pastor and the board of trustees, the trustees passed a resolution to terminate the pastor's service. *Vincent*, 114 Mich. App. at 244, 318 N.W.2d at 630. The pastor continued to conduct services at his church after the board notified him of his purported termination. *Vincent*, 114 Mich. App. at 244, 318 N.W.2d at 630. The trustees hired security guards who forcibly removed the pastor from the church. *Vincent*, 114 Mich. App. at

245, 318 N.W.2d at 630. The pastor sued for an injunction to prevent the trustees from further interfering with his relationship to the church. *Vincent*, 114 Mich. App. at 245, 318 N.W.2d at 630. The trial court held that " 'the doctrine of separation of church and state' proscribed judicial review of plaintiff's claims." *Vincent*, 114 Mich. App. at 246, 318 N.W.2d at 631.

On appeal, the court stated that it had jurisdiction to determine if the proper church authority made the termination decision. *Vincent*, 114 Mich. App. at 246-47, 318 N.W.2d at 631. The court consulted the church's governing manual to determine whether the trustees' dismissal was the "action of the church." *Vincent*, 114 Mich. App. at 248, 318 N.W.2d at 632. The court found that the trustees' dismissal violated the manual because the manual made dismissal of the pastor "the exclusive prerogative of the church membership." *Vincent*, 114 Mich. App. at 248, 318 N.W.2d at 632. Because the board's action violated the church's governing law, the court held that the board's action had no legal effect. *Vincent*, 114 Mich. App. at 248, 318 N.W.2d at 632.

Other jurisdictions have made similar findings of law. In *Williams*, the court held that in a congregational church, the congregation is the highest authority. The court found that the trustees had no authority to dismiss the preacher because the church's bylaws "clearly reserve to the congregation the right to dismiss the preacher." *Williams*, 349 S.C. at 343, 563 S.E.2d at 323. Similarly, in *Tibbs*, the court held that in a congregational church, "a civil court retains jurisdiction to determine whether the decision concerning 'who shall preach from the pulpit' was made by the proper church authority." *Tibbs*, 93 Ohio App. 3d at 42, 637 N.E.2d at 402. See also *Gillespie v. Elkins Southern Baptist Church*, 177 W. Va. 88, 92, 350 S.E.2d 715, 719 (1986) (in a congregational church, the membership ultimately controls the business of the church and, therefore, has the power to hire and fire the pastor); *Hemphill v. Zion Hope Primitive Baptist Church of Pensacola, Inc.*, 447 So. 2d 976, 977 (Fla. App. 1984) (civil courts can determine whether a minister's discharge accorded with the corporate charter without addressing ecclesiastic matters).

The church cites several cases that hold that courts must not interfere with ecclesiastical decisions, like those regarding the employment of clergy. *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 709, 49 L. Ed. 2d 151, 162, 96 S. Ct. 2372, 2380 (1976); *Gabriel v. Immanuel Evangelical Lutheran Church, Inc.*, 266 Ill. App. 3d 456, 640 N.E.2d 681 (1994). The Court in *Milivojevich*, 426 U.S. at 709, 49 L. Ed. 2d at 162, 96 S. Ct. at 2380, held:

"[T]he First and Fourteenth Amendments mandate that civil courts

shall not disturb the decisions of the highest ecclesiastical tribunal within a church of hierarchical polity, but must accept such decisions as binding on them, in their application to the religious issues of doctrine or polity before them."

Again, as the Supreme Court held in *Kedroff v. Saint Nicholas Cathedral of the Russian Orthodox Church in North America*, 344 U.S. 94, 116, 97 L. Ed. 120, 136-37, 73 S. Ct. 143, 154-55 (1952), "Freedom to select the clergy, *where no improper methods of choice are proven*, we think, must now be said to have federal constitutional protection as a part of the free exercise of religion against state interference." (Emphasis added.) Thus, any church, whether hierarchical or congregational, has the autonomy to select the clergy as long as the method of selection comports with the church's governing law.

But the first and fourteenth amendments do not prohibit court intervention when the church fails to follow the procedures it has, itself, enacted. *Abrams*, 306 Ill. App. 3d at 1011. In this case the church has conceded that its joint boards did not follow procedures set out in its bylaws for terminating the services of its pastor. The court does not need to interpret religious law to decide the dispute. We decide only that the congregation did not authorize its boards to terminate its pastor's service without following the bylaw procedures for terminating a pastor. The court can decide the issue by applying neutral legal principles to interpret the church's bylaws, handbook and covenant.

■ The evidence presented at trial, concerning Reverend Ervin's alleged violation of church rules, does not belong in a civil court. If the joint boards seek to remove Reverend Ervin for the alleged misconduct, they may need to present such evidence to the highest authority within the church, and the sole authority with the power to terminate the pastor's service: the church members. We hold here only that the boards have not effectively terminated Reverend Ervin's service as pastor, because the church members have not voted, in accord with the bylaws, for that termination.

The trial court did not need to inquire into religious doctrine and religious law to decide whether the joint boards violated the bylaws when they purported to terminate Reverend Ervin's service as pastor. The first and fourteenth amendments do not forbid judicial determination of whether the proper church authority made the decision to remove the pastor. We find that the joint boards' decision was not an action of the church because it did not comply with the church's

bylaws. We reverse the trial court's order dismissing the complaint and remand for further proceedings consistent with this opinion.

Reversed and remanded.

GORDON and McBRIDE, JJ., concur.