350 S.E.2d 715

James M. GILLESPIE

v.

The ELKINS SOUTHERN BAPTIST CHURCH, and Howard Shoemake, Terry Morrison, and Ronald Nestor, successor in office to Sharon C. Spurlock, in their official capacity as Trustee and/or Deacons and/or officers of the Elkins Southern Baptist Church.

No. 16923.

Supreme Court of Appeals of West Virginia.

Nov. 19, 1986.

Rehearing Denied Dec. 18, 1986.

---

1. The case cited by the insured, *Doe v. Brown,* 203 Va. 508, 125 S.E.2d 159 (1962), merely interprets the Virginia statute.

Darrell W. Ringer, Morgantown, for appellant.

William W. Talbott, Webster Springs, for appellees.

McGRAW, Justice:

This is an appeal by the Elkins Southern Baptist Church and certain of its officials from the entry of judgment by the Circuit Court of Preston County in favor of the Reverend James M. Gillespie in the amount of $45,998.80. Rev. Gillespie makes cross assignments of error regarding the directed verdicts rendered in favor of certain defendants and the relief allowed by the circuit court.

Rev. Gillespie was called as the pastor of the Elkins Southern Baptist Church in the fall of 1978, after a selection process which was consistent with the relevant portions of the Church's constitution and by-laws. While the compensation to be provided Rev. Gillespie was agreed upon, his employment was not for a specified period of time. The trial court ruled that Rev. Gillespie was an at-will employee and that ruling is not seriously challenged on appeal.

Relations between Rev. Gillespie and the Church went well for some two years, but then an anti-pastor faction headed by defendant Howard Shoemake, the Chairman of the Board of Deacons, began trying to oust Rev. Gillespie. A motion to vacate the pulpit, made at the March 15, 1981 regularly scheduled church business meeting, failed by a vote of thirty to ten. A week later, at the March 22, 1981 morning worship service, Mr. Shoemake announced to the congregation that a special meeting would be held at six-thirty that evening to again consider dismissing the pastor.

During this period of unrest, both Rev. Gillespie and Mr. Shoemake had consulted with Donald Walls, an official of the Monongahela Baptist Association. The Church was affiliated with the Association, but it is clear that this affiliation did not in any way diminish the Church's autonomy. At Walls' request, John Andes served as moderator during the special business meeting on March 22, 1981. Mr. Andes was not a member of the Church, nor did he hold an official position with the Association, but had previously served as a parliamentarian with other Baptist groups. As a result of a motion made at the special meeting, Rev. Gillespie was dismissed by a vote of thirty-one to twenty-five.

On September 14, 1981, Rev. Gillespie filed a suit alleging wrongful discharge, which ended in a mistrial. He then amended his complaint to include civil conspiracy claims against Walls and Andes, among others. At the second trial the court gave a directed verdict in favor of the defendants on the conspiracy claims, but the jury returned a verdict in the amount of $53,000.00 in favor of Rev. Gillespie on his wrongful discharge claim. The circuit court entered post-trial orders denying Rev. Gillespie's plea for reinstatement and requiring remittitur of $7,001.20, representing the income shown to be earned by Rev. Gillespie between his dismissal and the second trial.

## I.

■ We first address the question of whether jurisdiction of the civil courts is proper. "The power of the civil courts to interfere with the internal operations of churches is severely limited by the First Amendment to the *Constitution of the United States* as applied to the states by the Fourteenth Amendment, and by *W.Va. Const.* art. III, § 15. . . ." Syllabus Point 1, *Board of Church Extension v. Eads,* 159 W.Va. 943, 230 S.E.2d 911 (1976). Civil courts have generally held that they lack jurisdiction to hear and determine any controversy relating to purely ecclesiastical or spiritual practices. Annot., 31 A.L.R. 4th 851, 854 (1984). On the other hand, the courts have not hesitated to find jurisdiction to protect property and contractual rights, even when one of the parties is a church or religious society.[1] 66 Am.Jur.2d *Religious Societies* § 45 (1973). Rev. Gillespie's claims fall into this latter category.

■ Nevertheless, we would hesitate to find that the trial court had jurisdiction at the time the suit was filed if the Church were part of a hierarchical church structure with attendant conflict resolution mechanisms which had not yet been exhausted.[2] *See Board of Church Extension,* 159 W.Va. at 949, 230 S.E.2d at 915, *Brady v. Reiner,* 157 W.Va. 10, 35–36, 198 S.E.2d 812, 827 (1973), *overruled on other grounds, Board of Church Extension,* 159 W.Va. 943, 230 S.E.2d 911. The Elkins Southern Baptist Church, however, is congregational in polity and judicial scrutiny of final actions by the local church affecting rights under the civil law is appropriate. *Antioch Temple, Inc. v. Parekh,* 383 Mass. 854, 860–61, 422 N.E.2d 1337, 1341– 42 (1981); *see Brady* 157 W.Va. at 36, 198 S.E.2d at 827.

## II.

■ The essence of Rev. Gillespie's claim is that he was wrongfully discharged from his position as pastor of the Church. West Virginia, of course, recognizes that an action in tort may arise when an at-will employee is discharged for reasons contrary to some substantial public policy. *Cordle v. General Hugh Mercer Corp.,* 174 W.Va. 321, 325 S.E.2d 111 (1984); *Stanley v. Sewell Coal Co.,* 169 W.Va. 72, 285 S.E.2d 679 (1981); *Shanholtz v. Monongahela Power Co.,* 165 W.Va. 305, 270 S.E.2d 178 (1980); *Harless v. First National Bank in Fairmont,* 162 W.Va. 116, 246 S.E.2d 270 (1978). We have also recently recognized that the at-will employment status of a worker may be modified where a personnel manual promises job security on certain terms, such as when the employer makes a definite promise not to discharge the employee except for cause. *Cook v. Heck's, Inc.,* 176 W.Va. 368, 342 S.E.2d 453, 459 (1986).

■ There are at least two problems with Rev. Gillespie's wrongful discharge claim. First, Rev. Gillespie does not assert that his termination violated any substantial public policy, nor does he claim that he received any definite promise of job security.[3] More importantly, however, analysis of Rev. Gillespie's claim under either of these theories would require the civil courts to examine the reasons for the pastor's termination. Almost inevitably, this analysis would require the courts to go beyond completely neutral principles of law to inquire into church doctrine or to determine if the termination was arbitrary.

---

1. "When a civil right depends upon an ecclesiastical matter, it is the civil court, and not the ecclesiastical, which is to decide. But the civil tribunal tries the civil right and no more; taking the ecclesiastical decisions out of which the civil right arises as it finds them." *Watson v. Jones,* 80 U.S. (13 Wall.) 679, 731, 20 L.Ed. 666 (1869) (quoting *Harmon v. Dreher,* 2 Speer's Equity 87).

2. As we noted in *Board of Church Extension,* 159 W.Va. at 948–49, 230 S.E.2d at 914–15;

churches may generally be grouped into two types. In the hierarchical structure, the local church is subordinate to a general body and its laws and procedures. In a congregational church, all power and authority is vested in the local congregation.

3. For the purposes of this appeal only, we may assume, without deciding, that the Church's constitution and by-laws functioned as the "personnel manual" for Rev. Gillespie's employment by the Church.

This the courts cannot do. *Board of Church Extension,* 159 W.Va. at 955–56, 230 S.E.2d at 918; *see Serbian Orthodox Diocese for the United States of America and Canada v. Milivojevich,* 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976).

What remains of Rev. Gillespie's claim is his assertion that the special meeting of March 22, 1981 was improperly called, thus voiding any action taken at that meeting. Rev. Gillespie contends that he has not effectively been discharged from his pastoral position.

The Church's constitution provides for special meetings "upon recommendation of pastor and/or a body of deacons." All parties to this appeal present arguments about which people were qualified and serving as deacons on March 22, 1981 and whether "a body of deacons" had agreed in advance to call the special meeting. While a future case may require this Court to decide thorny questions such as these, our concern here is more limited.

█ As noted earlier, in a congregational church the membership ultimately controls the business of the church and, therefore, has the power to hire and fire the pastor. Without some compelling reason to do otherwise, this Court will limit its analysis to inquiring whether the congregation met and whether it acted to terminate the pastor's services. *Vincent v. Raglin,* 114 Mich.App. 242, 318 N.W.2d 629 (1982); *Graham v. Lockhart,* 42 N.C.App. 377, 256 S.E.2d 518 (1979); *Morris Street Baptist Church v. Dart,* 67 S.C. 338, 45 S.E. 753 (1903).

█ Rev. Gillespie does not claim that he or any member of the congregation failed to receive actual notice of the special meeting. The presence of at least fifty-six persons at the meeting is evidence of adequate notice.[4] No claim is made that nonmembers participated in the vote to remove Rev. Gillespie. We find that the congregation did indeed act to terminate Rev. Gillespie. Our analysis need go no further, and

we hold that it was error for the trial court to do so.

### III.

One of Rev. Gillespie's cross assignments of error is that the trial court should not have entered a directed verdict in favor of defendants Walls and Andes. Rev. Gillespie did not appeal the entry of the directed verdict within the normal eight month period provided for by statute and rule. W.Va. Code § 58–5–4 (Supp.1986); R.App.P. W.Va.S.Ct.App. 3. Instead, Rev. Gillespie relies on language in Rule 10(f) of our rules of appellate procedure which provides that a cross assignment "may be made notwithstanding the fact that appellee did not file a separate petition for an appeal within the statutory period for taking an appeal."

█ In the normal case, Rule 10(f) allows an appellee to avail himself of his adversary's appeal to correct any prejudicial error apparent in the record. 1B Michie's Jurisprudence, *Appeal and Error* § 250 (1980). When, however, the appellee claims an error involving someone not a party to the appeal, we must look to the surrounding circumstances before deciding if the appellee's claims may be raised by cross assignment of error. "Where one party only appeals, but his rights and the rights of others are not only involved in the same question, but are equally affected by the decree or judgment, the appeal of the one will call for an adjudication also of the rights of those not appealing." *Levine v. Headlee,* 148 W.Va. 323, 334, 134 S.E.2d 892, 898 (1964) (quoting Syllabus Point 1, *Buskirk v. Musick,* 100 W.Va. 247, 130 S.E. 435 (1925)). When, however, the "parties to a suit stand upon distinct and unconnected grounds, their rights being separate and not equally affected by the same decree, the appeal of one will not bring up for adjudication the rights of the other." *Levine,* 148 W.Va. at 334, 134 S.E.2d at 898 (quoting Syllabus Point 4, *Stannard Supply Co. v. Delmar Coal Co.,* 110 W.Va. 560, 158 S.E. 907 (1931)).

---

**4.** The Church minutes indicate that during February, 1981 attendance at Sunday morning ser-

vices averaged 51 persons.

The claims against the two groups of defendants in this case were based on distinct and unconnected grounds and there were two different judgments entered. Under these facts, this Court is not required by Rule 10(f) to consider the appellee's contentions involving the directed verdict on the civil conspiracy claims, because the defendants involved are not parties to this appeal.[5]

In light of our disposition of the wrongful discharge claim, little discussion is needed of Rev. Gillespie's cross assignments of error on the issues of remittitur and reinstatement. It is sufficient to observe that the trial court acted well within the limits of discretion in requiring remittitur of an amount equal to Rev. Gillespie's earnings after his termination and in refusing reinstatement under the circumstances of this case.

For the foregoing reasons, the judgment of the Circuit Court of Preston County is reversed and the case is remanded with directions to dismiss the action.

Reversed and remanded.

---

5. Even if we were to reach the merits of Rev. Gillespie's claim, it is clear that the trial court properly directed a verdict in favor of the defendants on the civil conspiracy claims. While there was some evidence of a concerted effort to have Rev. Gillespie fired, there was no evidence that anyone planned to act in an unlawful manner. "There can be no conspiracy to do that which is lawful in a lawful manner." Syllabus Point 2,, *Porter v. Mack*, 50 W.Va. 581, 40 S.E. 459 (1901).