# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## January 2018 Term

_____

No. 16-1156
_____

R.S. Mutter, Warden,
Stevens Correctional Center,
Petitioner,

v.

BOBBY ROSS,
Respondent.

**FILED**

**March 12, 2018**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Tod J. Kaufman, Judge
Civil Action No. 15-P-322

AFFIRMED

_____

Submitted: January 24, 2018
Filed: March 12, 2018

Patrick Morrisey, Esq.
Attorney General
Brooks H. Crislip, Esq.
Deputy Attorney General
Celeste Webb-Barber, Esq.
Assistant Attorney General
Zachary A. Viglianco, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for the Petitioner

Clinton W. Smith, Esq.
Charleston, West Virginia
Counsel for the Respondent

JUSTICE KETCHUM delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

Generally, under *Packingham v. North Carolina*, 137 S.Ct. 1730 (2017), a parole condition imposing a complete ban on a parolee's use of the internet impermissibly restricts lawful speech in violation of the First Amendment to the United States Constitution. There are instances, however, where the West Virginia Parole Board has a legitimate interest in restricting a parolee's access to the internet. The restrictions must be narrowly tailored so as to not burden substantially more speech than is necessary to further the government's legitimate interests.

**Justice Ketchum:**

The West Virginia Parole Board ("the Board") revoked Bobby Ross's parole based, in part, on him violating a condition of parole prohibiting him from possessing or having contact with a computer or other device with internet access. We are asked whether this condition of parole is constitutional under the First Amendment.[1]

In 2017, the United States Supreme Court held in *Packingham v. North Carolina*[2] that a state statute barring registered sex offenders from accessing social media networking websites was an overbroad restriction of the right to free speech in violation of the First Amendment. Like the statute in *Packingham*, Mr. Ross's condition of parole "bars access to . . . sources for knowing current events, checking ads for employment, speaking and listening in the modern public square, and otherwise exploring the vast realms of human thought and knowledge."[3] Unlike the statute in *Packingham*, Mr. Ross's condition of parole extends beyond social media. It forbids Mr. Ross from visiting *any* website, receiving an email from an employer or medical professional, paying a bill online, using the internet to check the weather, or using a smartphone.

---

[1] The First Amendment to the United States Constitution provides, in pertinent part, that: "Congress shall make no law . . . abridging the freedom of speech[.]"

[2] 137 S.Ct. 1730 (2017).

[3] *Id.*, at 1737.

Because Mr. Ross's condition of parole is broader than the statute struck down in *Packingham*, we find that it is an overbroad restriction of free speech in violation of the First Amendment.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

In 1987, Mr. Ross sexually assaulted an adult female in her apartment and stole money from her purse. He was convicted and sentenced to prison on the following charges: (1) first-degree sexual assault; (2) burglary; and (3) attempted aggravated robbery. He remained in jail until the Board released him on parole in May 2014. Upon his release, Mr. Ross was required to register as a sex offender.[4]

Mr. Ross's release on parole was subject to numerous conditions. Because he was a sex offender, Mr. Ross's parole officer imposed on him a special condition of parole[5] prohibiting him from "possess[ing] or hav[ing] contact with *any* computer, electronic device, communication device or any device which is enabled with internet

---

[4] Mr. Ross was not sentenced to extended supervision as a sex offender upon his release from prison. West Virginia's statute for extended supervision for sex offenders, West Virginia Code § 61-12-26, did not take effect until June 2003 and did not apply to Mr. Ross's conviction in 1987.

[5] The version of W.Va. Code St. R. § 90.2.2.1.l in effect when Mr. Ross was released on parole authorized parole officers to impose additional restrictions on individual parolees beyond the conditions imposed on all parolees by statute or by regulation. These additional restrictions are commonly called "special conditions" of parole. W.Va. Code St. R. § 90.2.2.1.1 was repealed in 2016. Its repeal has no effect on this case.

access."[6]  Furthermore, Mr. Ross's release on parole was subject to him not committing any new violation of criminal law.  Under West Virginia's Sex Offender Registration Act,[7] it is a felony for a registered sex offender to fail to inform the West Virginia State Police of any internet account(s) he or she has.[8]

While he was released on parole, Mr. Ross moved in with his girlfriend, M.W.  M.W. owned a computer with internet access which she kept at the residence she shared with Mr. Ross.  Both the computer and the internet account were password protected, and it is undisputed that Mr. Ross did not know the password to M.W.'s computer or her internet account.  There was no evidence presented that Mr. Ross ever used M.W.'s computer or logged on to the internet during his parole.

In December 2014, seven months after Mr. Ross was released on parole, Mr. Ross's parole officer learned that M.W. owned a computer.  The parole officer did not conduct a forensic analysis of the computer to determine whether Mr. Ross used the computer or that he otherwise logged on to the internet during his parole.  Nevertheless,

---

[6] Emphasis added.

[7] West Virginia Code §§ 15-12-1 – 10 [1999].

[8] Under West Virginia Code § 15-12-2(d) [2012]:

Persons required to register [as a sex offender] under the provisions of this article shall register in person at the West Virginia State Police detachment responsible for covering the county of his or her residence, and in doing so, provide or cooperate in providing, at a minimum, the following when registering: . . . (8) Information relating to any Internet accounts the registrant has and the screen names, user names or aliases the registrant uses on the Internet[.]

3

Mr. Ross was arrested and returned to custody for violating the conditions of his parole by possessing or having contact with a computer with internet access.[9]

The Board conducted a parole revocation hearing charging Mr. Ross with violating his parole in the following three ways: (1) possessing or having contact with a computer with internet access; (2) failing to inform the State Police of an internet account; and (3) using marijuana on three separate occasions during his parole. Mr. Ross pled not guilty to possessing or having contact with a computer and failing to report an internet account, but he admitted to using marijuana.

At the revocation hearing, Mr. Ross's parole officer testified before the Board that she conducted no forensic analysis of the computer to reveal its internet usage history. The State presented no evidence that Mr. Ross used M.W.'s computer, used or possessed another computer, or had an internet account or username. The State also failed to refute testimony from both Mr. Ross and M.W. that he did not know the password to M.W.'s computer or her internet account.

Nevertheless, the Board found sufficient evidence that Mr. Ross was guilty of possessing or having contact with a computer, failing to report an internet account, and using marijuana. The Board revoked Mr. Ross's parole and reinstated his prison sentence.

_____

[9] In addition to being charged with violating his parole, criminal charges were filed against Mr. Ross for failing to report an internet account to the State Police. For reasons not specified in the record, Mr. Ross's criminal charges were dismissed. However, his parole revocation charges regarding an internet account were not dismissed, and they proceeded to a hearing before the Board.

4

Mr. Ross challenged the Board's decision to revoke his parole and filed a Petition for a Writ of Habeas Corpus in the circuit court. The circuit court vacated the Board's decision and reinstated Mr. Ross's release on parole on the following three grounds: (1) Mr. Ross's special condition of parole prohibiting his possession or contact with a computer with internet access was unconstitutional; (2) there was insufficient evidence that Mr. Ross owned an internet account to report to the State Police; and (3) a revocation of parole based on simple possession of marijuana violates West Virginia's parole laws.[10] The State appeals the circuit court's order and requests that we reinstate the Board's decision to revoke Mr. Ross's parole.[11]

## II.
## STANDARD OF REVIEW

The State argues that the circuit court erred in reversing the Board's decision to revoke Mr. Ross's parole. Generally, "[t]he decision to grant or deny parole . . . shall be reviewed by this Court to determine if the [Parole Board] abused its discretion

---

[10] The State requested and was granted a stay of the circuit court's order pending resolution of this appeal. Therefore, Mr. Ross has remained in custody notwithstanding the circuit court's order.

[11] This appeal was filed by Mr. Ralph Terry, who was the then-acting Warden of Stevens Correctional Center. Pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure, the current Warden of Stevens Correctional Center, Mr. R.S. Mutter, has been automatically substituted. However, for the ease of the reader, we refer to the Warden as "the State" throughout this Opinion.

by acting in an arbitrary and capricious fashion."[12]  However, to the extent we are called upon to resolve a constitutional question, our standard of review is *de novo*.[13]

# III.
# ANALYSIS

The Board revoked Mr. Ross's parole on the following three grounds: (1) he possessed or had contact with a computer with internet access; (2) he failed to inform the State Police of an internet account; and (3) he used marijuana.  The State argues that the revocation of Mr. Ross's parole was constitutional, supported by the evidence in the record, and in accordance with West Virginia's parole laws.  For the reasons explained below, we disagree with the State and affirm the circuit court's order vacating the Board's decision to revoke Mr. Ross's parole.

## *A.  Possession or Contact with a Computer with Internet Access*

Mr. Ross argues that the special condition of his parole, which prohibited him from possessing or having contact with *any* computer or electronic device with internet access, was unconstitutional in light of *Packingham v. North Carolina*, 137 S.Ct. 1730 (2017).  In *Packingham*, the Court held that a state statute which barred registered

---

[12] *State ex rel. Stollings v. Haines*, 212 W.Va. 45, 47, 569 S.E.2d 121, 123 (2002) (internal quotations and citations omitted).

[13] *See State ex rel. Corbin v. Haines*, 218 W.Va. 315, 320, 624 S.E.2d 752, 757 (2005) ("To the extent Appellant raises constitutional questions, our standard of review is de novo.").

sex offenders from accessing "social media networking websites"[14] was an overbroad restriction on free speech in violation of the First Amendment.[15]  Mr. Ross contends that the special condition of his parole was broader than the statute struck down in *Packingham* because it operated as a complete ban on his access to the internet, and therefore, it too was a violation of the First Amendment.

The First Amendment protects a person's access to the internet.[16]  As the Court in *Packingham* provided:

> A fundamental principle of the First Amendment is that all persons have access to places where they can speak and listen, and then, after reflection, speak and listen once more. . . . While in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear.  It is cyberspace – the vast democratic forums of the internet in general.[17]

---

[14]  *See Packingham*, 137 S.Ct. at 1733-34 for North Carolina's full definition of "social media networking websites."  The Court noted that North Carolina's definition potentially covered websites as varied as Amazon.com, Washingtonpost.com, and Webmd.com.  *Id*., at 1736.

[15]  *Id*., at 1738.

[16]  *Id*.; *See also Doe v. Kentucky ex rel. Tilley*, 2017 WL 4767143 *3 (E.D.K.Y. 2017) (While discussing *Packingham,* the court stated: "Writing for the majority, Justice Anthony Kennedy explained that internet use is clearly encompassed by the First Amendment.").

[17]  *Packingham*, 137 S.Ct. at 1735 (internal quotations and citations omitted).

Therefore, a content neutral law restricting a person's access to the internet cannot stand unless it is "narrowly tailored to serve a significant governmental interest."[18] That is, a law must not restrict substantially more speech than is necessary to further the government's interest.[19]

In *Packingham*, the Court acknowledged that the purpose behind the statute, protecting children from sexual abuse solicited over the internet, was a legitimate governmental interest.[20] Indeed: "The First Amendment permits a State to enact specific, narrowly tailored laws that prohibit a sex offender from engaging in conduct that often presages a sexual crime, like contacting a minor or using a website to gather information about a minor."[21] The State is limited to narrowly tailored restrictions specifically crafted to "ward off the serious harm that sexual crimes inflict."[22]

The fatal flaw with the statute in *Packingham* was its broad scope: it prohibited substantially more speech than was necessary to protect children from sexual abuse solicited over the internet. By barring registered sex offenders from accessing

---

[18] *Id.*, at 1736, *quoting McCullen v. Coakley*, 134 S.Ct. 2518. Similarly, this Court has provided as to content-neutral restrictions on free speech that "the government may enforce regulations restricting the time, place, and manner of expression if the regulations are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Wheeling Park Comm'n v. Hotel & Rest. Empl. Int'l Union*, 198 W.Va. 215, 222, 479 S.E.2d 876, 883 (1986).

[19] *Packingham*, 137 S.Ct. at 1736.

[20] *Id.*

[21] *Id.*, at 1737.

[22] *Id.*

8

social media, the state restricted First Amendment activity that was not likely to lead to the sexual abuse of a child. As the Court explained:

> Social media allows users to gain access to information and communicate with one another about it on any subject that might come to mind. . . . By prohibiting sex offenders from using those websites, North Carolina with one broad stroke bars access to what for many are the principle sources for knowing current events, checking ads for employment, speaking and listening in the modern public square, and otherwise exploring the vast realms of human thought and knowledge.[23]

Accordingly, the Court struck down the statute as a "prohibition unprecedented in the scope of First Amendment speech it burdens."[24]

The special condition of Mr. Ross's parole restricted more First Amendment activity than was necessary to protect anyone from misconduct that is a consequence of internet use. Mr. Ross was not allowed to use, possess, or have contact with *any* computer or electronic device with internet access, which necessarily entails him being prohibited from accessing social media networking websites, as was the case in *Packingham*. Thus, Mr. Ross was "bar[red] access to . . . sources for knowing current events, checking ads for employment, speaking and listening in the modern public square, and otherwise exploring the vast realms of human thought and knowledge."[25]

---

[23] *Id.*

[24] *Id.*

[25] *Id.*

9

Moreover, the special condition of Mr. Ross's parole went even further than the statute struck down in *Packingham* because he was prohibited from visiting *any* website, including sites as varied as Amazon.com, Webmd.com, news sites, or job sites. The special condition of Mr. Ross's parole forbade him from receiving an email from an employer or medical provider, paying a bill online, using the internet to check the weather, or using a smartphone. If his special condition of parole prohibited him from being in the same building as a computer with internet access, as the State seems to argue in its brief,[26] Mr. Ross would potentially be excluded from visiting a library, a school, most brick and mortar stores, and many places of employment.

The State attempts to distinguish this case from *Packingham* based on the fact that Mr. Ross is a parolee. It relies on a D.C. Circuit case, *United States v. Rock*,[27] in which the court upheld a condition of supervised release prohibiting the defendant from accessing the internet. Applying a plain error analysis, the court found: "The Supreme Court's recent decision in *Packingham v. North Carolina* . . . does not make the error plain because Rock's condition is imposed as part of his supervised-release sentence, and is not a post-custodial restriction of the sort imposed on Packingham."[28] The State argues

---

[26] Although we resolve this issue on constitutional grounds, the parties argued extensively as to whether Mr. Ross violated the special condition of his parole. The State argued that, even though there is no evidence Mr. Ross *did* log on to the internet during his parole, he *could* have accessed the internet because he lived in a residence with an internet-enabled computer.

[27] 863 F.3d 827 (D.C. 2017).

[28] *Rock*, 863 F.3d at 831.

10

that we should adopt the D.C. Circuit's analysis in *Rock* to hold that the Board may impose an internet ban on a parolee simply because he or she is on parole.

We do not agree with the State that Mr. Ross's special condition of parole is constitutional under the court's analysis in *Rock*. *Rock* is distinguishable from this case because the defendant in *Rock* used the internet to commit his crime. He installed a hidden camera in the bedroom of his girlfriend's eleven-year-old daughter and tried to distribute images of her naked body online.[29] This distinction is supported by the cases cited by *Rock* in which the D.C. Circuit decided on supervisory conditions imposing bans on internet access: in the cited cases where the defendant's crime was committed primarily over the internet, the conditions were upheld.[30] By contrast, in the case cited by *Rock* where the defendant's crime was not committed primarily over the internet, the condition was struck down as an overbroad restriction of the defendant's liberty.[31]

Likewise, it has been noted that:

---

[29] *Id.*, 863 F.3d at 829.

[30] *See United States v. Legg*, 713 F.3d 1129, 1132 (D.C. Cir. 2013) (providing, as to condition of supervised release imposed on defendant who used the internet to solicit sex from minor, that: "this court has stated that such limitations [on a defendant's internet use] may be appropriate for those who use the Internet to initiate or facilitate the victimization of children.") (internal quotations and citations omitted); *United States v. Accardi*, 669 F.3d 340, 347-48 (D.C. Cir. 2012) (defendant used internet to distribute child pornography); *United States v. Laureys*, 653 F.3d 27, 31 (D.C. Cir. 2011) (defendant tried to solicit sex with child online); *United States v. Love*, 593 F.3d 1, 4 (D.C. Cir. 2010) (defendant traded child pornography with people he met online); *United States v. Sullivan*, 451 F.3d 884, 885 (D.C. Cir. 2006) (defendant possessed child porn on his computer).

[31] *United States v. Malenya*, 736 F.3d 554 (D.C. Cir. 2013) (defendant knowingly solicited sex with a minor primarily over text message).

11

> [C]ourts have upheld conditions prohibiting all use of the Internet only in limited circumstances. Thus far, such conditions have been permitted in one of two scenarios: when use of the Internet was 'essential' or 'integral' to the offense of conviction, or when ... the defendant had a history of using the Internet to commit other offenses.[32]

One court, relying on *Packingham*, has held that a condition of parole prohibiting access to the internet violated the First Amendment, noting that: "none of [the defendant's] convictions, each of which occurred at least twenty years ago, involved the use of the internet or social media."[33]

We recognize that "a person placed on parole . . . has substantial restraints on his freedom[,]"[34] but "[t]his does not mean . . . that a parolee or probationer is not entitled to any constitutional rights whatsoever[.]"[35] *Packingham* is clear that a

---

[32] *United States v. LaCoste*, 821 F.3d 1187, 1191 (9th Cir. 2016). *See also See United States v. Ramos*, 763 F.3d 45, 62 (1st Cir. 2014) ("[C]ases in other circuits are in general accord: where a defendant's offense did not involve the use of the internet or a computer, and he did not have a history of impermissible internet or computer use, courts have vacated broad internet and computer bans regardless of probation's leeway in being able to grant exceptions."); *United States v. Smathers*, 351 Fed.Appx. 801, 802 (4th Cir. 2009) (invalidating supervisory condition restricting defendant's internet access because "Smathers's crime did not involve a computer or the Internet. Nor is there any evidence that Smathers has a history of using the computer or Internet to obtain or disseminate child pornography."); *United States v. Crume*, 422 F.3d 728, 733 (8th Cir. 2005) (Condition of supervised release imposing ban on defendant's internet access violated the First Amendment because, "[a]lthough Mr. Crume has a lengthy history of grievous sexual misconduct, the record is devoid of evidence that he has ever used his computer for anything beyond simply possessing child pornography.").

[33] *Manning v. Powers*, 2017 WL 6512228 at *4 (C.D. Cal. 2017).

[34] *Conner v. Griffith*, 160 W.Va. 680, 686, 238 S.E.2d 529, 532 (1977).

[35] *State ex rel. Eads v. Duncil*, 196 W.Va. 604, 609, 474 S.E.2d 534, 539 (1996).

12

government restriction on internet access must be narrowly tailored so as not to burden more speech than is necessary to further the government's legitimate interests. On this well-established rule, *Packingham* made no exception for parolees. Thus, we decline to accept the State's argument that Mr. Ross's status as a parolee, by itself, renders his special condition of parole constitutional.

Therefore, we now hold that, generally, under *Packingham v. North Carolina*, 137 S.Ct. 1730 (2017), a parole condition imposing a complete ban on a parolee's use of the internet impermissibly restricts lawful speech in violation of the First Amendment to the United States Constitution. There are instances, however, where the West Virginia Parole Board has a legitimate interest in restricting a parolee's access to the internet. The restrictions must be narrowly tailored so as to not burden substantially more speech than is necessary to further the government's legitimate interests.[36]

Mr. Ross's underlying offense did not involve the internet, and he has no history of using the internet to engage in criminal behavior. Moreover, the State has provided no explanation as to how a sweeping ban on Mr. Ross's internet access would

---

[36] Our decision today does not affect the validity of the pre-*Packingham* case, *State v. Hargus*, 232 W.Va. 735, 753 S.E.2d 893 (2013). In *Hargus*, we upheld a condition of supervised release prohibiting a sex offender who was convicted of child pornography from residing in the same house as a computer. We explained that: "there is good reason to restrict Mr. Hargus's computer and Internet usage in his own home: *Mr. Hargus has shown a propensity for downloading sexually explicit material involving minors onto his computer*, and such material may be accessed more easily in the privacy of a home." *Id*. at 746 (emphasis added). *Hargus* remains valid law because the following two circumstances were present in that case: (1) his underlying offense involved the internet; and (2) he had a history of using the internet to engage in criminal behavior.

13

protect anyone from misconduct that might result from his internet use or why the State's legitimate interests could not be furthered through less restrictive means, such as computer monitoring.[37] Yet, the State imposed a condition of parole prohibiting him from possessing or using *any* computer or device with internet access. The special condition of parole is clearly unconstitutional in light of the Supreme Court's ruling in *Packingham*. Thus, it cannot serve as a basis for Mr. Ross's parole revocation.[38]

### B. Failure to Inform the State Police Regarding an Internet Account

The Board also found that Mr. Ross failed to inform the State Police of an internet account. We have held that, "[t]he West Virginia Board of Probation and Parole must obey legislation and must act in a way which is not unreasonable, capricious, or

---

[37] *See United States v. Browder*, 866 F.3d 504, 512 (2d Cir. 2017) (distinguishing condition of supervised release requiring defendant to submit to computer monitoring, which the court held was constitutional, from a condition imposing an internet ban). Our decision today does not affect the validity of a supervisory condition requiring the defendant to submit to computer monitoring.

[38] Before disposing of this issue, we note the State's argument that the special condition of Mr. Ross's parole does not run afoul of *Packingham* because it allowed Mr. Ross to access the internet *after* obtaining permission from his parole officer. We disagree. As explained by the District Court of Maryland in its consideration of a similar supervisory condition after *Packingham*: "the fact that Defendant may use the Internet if he obtains prior written approval from his probation officer cannot salvage this otherwise overly broad restriction." *United States v. Maxson*, 2017 WL 6206044 *4 (D. Md. 2017) (citing *United States v. LaCoste*, 821 F.3d 1187, 1192 (9th Cir. 2016) ("If a total ban on Internet use is improper but a more narrowly tailored restriction would be justified, the solution is to have the district court itself fashion the terms of that narrower restriction. Imposing a total ban and transferring open-ended discretion to the probation officer to authorize needed exceptions is not a permissible alternative."), and *United States v. Ramos*, 763 F.3d 45, 61 (1st Cir. 2014) ("This authority of probation or a future court to modify a sweeping ban on computer or internet use does not immunize the ban from an inquiry that evaluates the justification for the ban in the first instance.")).

arbitrary."[39]  That is, there must be "some evidence in the record to support the Board's decision."[40]

The State presented no evidence that Mr. Ross owned any internet account while he was released on parole.  Moreover, there is also no indication in the record that he logged onto the internet while he was released on parole.  Finally, it is undisputed that Mr. Ross did not use, possess, or have physical contact with the computer in question, which belonged to his girlfriend, M.W.  After reviewing the record, we find that there was no evidence presented which supports the Board's finding that Mr. Ross was guilty of failing to report an internet account to the State Police.  Therefore, the Board's decision on this charge was arbitrary and capricious.

### C.     Mr. Ross's Admitted Use of Marijuana

Mr. Ross pled guilty to three counts of using marijuana.  Accordingly, the Board issued an order revoking his parole and reinstating his prison sentence.  The Board's order did not contain any written statement explaining why revocation of Mr. Ross's parole, as opposed to a lesser penalty, was warranted.  Mr. Ross has remained in jail for more than three years, since December 2014, due, in part, to him using marijuana.

To resolve whether the Board erred by revoking Mr. Ross's parole based on his marijuana use, we turn to West Virginia Code § 62-12-19 [2013].  In analyzing a statute, it is well-established that: "[w]e look first to the statute's language.  If the text,

---

[39] Syl. Pt. 3, *State ex rel. Eads*, 196 W.Va. 604, 474 S.E.2d 534.

[40] *Southern v. Burgess*, 198 W.Va. 518, 521, 482 S.E.2d 135, 138 (1996).

15

given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed."[41]

In West Virginia Code § 62-12-19(a)(2)(A), the Legislature provided that the Board may revoke a parolee's release on parole if he or she "committed new criminal conduct *other than a minor traffic violation or simple possession of a controlled substance*[.]"[42] Thus, under the plain language of West Virginia Code § 62-12-19(a)(2)(A), simple possession of a controlled substance (like marijuana) is excepted from the general provision that the Board may revoke parole for new criminal conduct.

The Legislature prescribed a lesser penalty for a parole violation involving simple possession of a controlled substance, like marijuana; West Virginia Code § 62-12-19(a)(2)(B) provides that:

> If the Parole Board panel finds that . . . the parolee has violated a condition of release or supervision other than the conditions of parole set forth in subparagraph (A), subdivision (2) of this subsection, the panel shall require the parolee to serve, for the first violation, a period of confinement up to sixty days or, for the second violation, a period of confinement up to one hundred twenty days *unless the Parole Board makes specific written findings of fact that a departure from the specific limitations of this paragraph is warranted*[.][43]

---

[41] *Appalachian Power Co. v. State Tax Dep't of W.Va.*, 195 W.Va. 573, 587, 466 S.E.2d 424, 438 (1995).

[42] Emphasis added.

[43] Emphasis and footnote added.

16

Therefore, West Virginia Code § 62-12-19(a)(2)(A)-(B) makes two points clear: (1) simple possession of a controlled substance is excepted from the general provision that the Board may revoke parole for new criminal conduct; and (2) the appropriate penalty for a parole violation involving simple possession of a controlled substance is sixty days in confinement for a first offense and one hundred twenty days in confinement for a second offense *unless* the Board makes specific written findings of fact that a different penalty is warranted.

The State argues that we should construe West Virginia § 62-12-19(a)(2)(A)-(B) to allow the revocation of Mr. Ross's parole because he used marijuana three times. We disagree. The State's argument ignores the plain language of West Virginia Code § 62-12-19(a)(2)(A), which clearly states that the Board may revoke parole for new criminal conduct "*other than a . . . simple possession of a controlled substance*[.]"[44] (Emphasis added). Moreover, the lesser penalties prescribed by the Legislature in West Virginia Code § 62-19-12(a)(2)(B) may be departed from only if the Board makes specific written findings of fact that another penalty is warranted. As we have held: "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."[45]

---

[44] Emphasis added.

[45] Syl. Pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951).

17

Despite the clear directives of West Virginia Code § 62-12-19(a)(2)(A)-(B), the Board revoked Mr. Ross's parole for simple possession of marijuana without making a specific written finding of fact stating why it was departing from the lesser penalties provided in West Virginia Code § 62-12-19(a)(2)(A)-(B). As a result, Mr. Ross has remained in jail for more than three years since the revocation of his parole.

The circuit court did not err by finding that the Board's decision to revoke Mr. Ross's parole was contrary to West Virginia's parole laws. We affirm the circuit court.

## IV.
## CONCLUSION

The Board's decision to revoke Mr. Ross's parole was unconstitutional under *Packingham v. North Carolina*. It was also without support from the evidence in the record and contrary to West Virginia's parole laws. Therefore, we affirm the circuit court's order vacating the Board's decision and reinstating his release on parole.

Affirmed.