IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**May 27, 2026**

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**AMBER B. ELMORE,**
**Plaintiff Below, Petitioner**

**v.) No. 25-ICA-234**   (Cir. Ct. Putnam Cnty. Case No. CC-40-2023-C-73)

**MOUNT VERNON BAPTIST CHURCH,**
**FRANK BUDD, THE BOARD OF DEACONS OF THE**
**MOUNT VERNON BAPTIST CHURCH,**
**and RONALD MCCLUNG,**
**Defendants Below, Respondents**

## MEMORANDUM DECISION

In this appeal, Petitioner Amber B. Elmore, the former Children's Minister at Mount Vernon Baptist Church ("MVBC") in Putnam County, West Virginia, argues that MVBC unlawfully terminated her employment because she reported another MVBC employee for suspected child abuse and accused MVBC's male youth minister of sexually harassing her daughter. In the June 2, 2025, order now on appeal, the Circuit Court of Putnam County found that Ms. Elmore's claims based on these allegations were barred by the provisions protecting freedom of religion in the United States Constitution and West Virginia Constitution. The Respondents MVBC, Frank Budd, and Ronald McClung filed a response in support of the circuit court's order.[1] Ms. Elmore filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

MVBC is governed by the Constitution and By-Laws of the Mount Vernon Baptist Church (the "MVBC Bylaws"). Article VIII, Section 5.B of the MVBC Bylaws specifically sets forth the procedure for terminating a minister, providing that "The Board of Deacons may recommend termination of any member of the pastoral staff at a called or regularly

---

[1] Ms. Elmore is represented by Clinton W. Smith, Esq. Respondents MVBC, Frank Budd, and Ronald McClung are represented by Ashley W. French, Esq., and Allison M. Subacz, Esq. Respondent the Board of Deacons of the Mount Vernon Baptist Church did not participate in this appeal. Respondents represented to the circuit court that the Board of Deacons of MVBC is not a legal entity distinct from MVBC itself.

1

scheduled meeting the date and purpose of which have been read from the pulpit on two successive, previous Sunday mornings."[2] Under the MVBC Bylaws, at least twenty-five percent of the active membership of the church must be present at a meeting to consider the termination of a member of the pastoral staff. A majority vote in favor of termination at such a meeting terminates the staff member from employment at MVBC.

In June 2021, Ms. Elmore was employed at MVBC as the Children's Minister and Sunday School Teacher, a position she had held for about two years. The Board of Deacons met several times in 2021 to address terminating Ms. Elmore from her position. Ultimately, the Board of Deacons decided unanimously to recommend her termination. Accordingly, Frank Budd, the chairman of the Board of Deacons, read the following statement to the congregation of MVBC at the end of the 11:00 am Sunday services on June 13, 2021, and June 20, 2021:

> A special Meeting will be held on June 27, 2021 for the purpose of voting for/against Amber Elmore's separation from employment. As you know, this meeting has been called, in accord with Mount Vernon's Constitution, to ask you to vote on the possible termination of Amber Elmore as an employee of the Church. As with all its decisions, this one was reached by the Deacon Board (in this case, unanimously) after many discussions and the frank exchange of views on the matter. We have devoted considerable, prayerful, consideration to the Church, Church staff, and Amber in reaching our conclusion regarding her continued employment. The Deacon Board had multiple meetings, conferences with staff members, including Amber, and exchanged hundreds of emails and text messages over the past four months with regard to the staff in general and Amber's working relationships with other staff members in particular. Through these conversations and deliberations, as well as Amber's previous resignation, which was not acted upon, we concluded that Amber's continued presence on the staff was contrary to the best interests of both the remaining staff and the Church. We gave Amber the opportunity to address those issues, which she declined because she said she was unprepared to discuss them at the time. The Deacon Board did not mention any staff members by name in this conversation. Amber's resignation caused the Deacon Board to seriously question her happiness with her position and the Church as well as her commitment to the Church in general and the duties of her position in particular. The Deacon Board has concluded that Amber's working relationship with other staff is irreparable and that her continued employment is not in the best interests of the Church. Once the conclusion was reached that Amber's employment with

---

[2] The MVBC Bylaws also provide that a termination can be initiated through a petition signed by twenty-five members of the church. However, this alternative procedure is not relevant under the facts of this appeal.

the Church was no longer tenable, the Deacon Board retained counsel from outside of the Church to guide it through this process. While some of you may be concerned that we have not addressed particular issues or instances that occurred during Amber's employment, given the Church Constitution's language governing the Deacon Board's mandate to request a membership vote and in consideration of privacy and other legal issues, we cannot open the floor to comments or questions from those present.

MVBC held a special business meeting on June 27, 2021. After the opening prayer, Mr. Budd read the above-quoted statement again, and Ms. Elmore's termination was put to a vote. Of the members present, fifty-one voted "Yes," sixteen voted "No," and two abstained. On June 29, 2021, the Church Clerk of MVBC issued a letter to Ms. Elmore notifying her that her employment at MVBC would end on July 29, 2021.

On June 11, 2023, Ms. Elmore filed a complaint in the Circuit Court of Putnam County alleging claims stemming from her employment and termination at MVBC. Ms. Elmore filed an amended complaint on July 4, 2023. In the amended complaint, Ms. Elmore alleged that on Sunday, May 9, 2021, while she was preparing for her duties as Children's Minister, the two children of one of the other MVBC employees ("Mr. C.")[3] arrived in the room. Ms. Elmore alleged that, as it was Mother's Day, she asked them what they loved about their mother, to which they responded that "[e]ven though she hits us, she still tries to be patient." Upon further questioning, the children also stated that they were more frightened of their father, Mr. C., who also hit them.

Ms. Elmore alleged that, after the service, she notified Frank Budd and Senior Pastor Ronald McClung of the children's statements about their parents and that she believed that she was obligated to report the matter to Child Protective Services and law enforcement. According to the amended complaint, Ms. Elmore, Mr. Budd, and Pastor McClung were mandatory reporters of suspected child abuse and neglect pursuant to West Virginia Code § 49-2-803(a). Ms. Elmore alleged that Pastor McClung held a meeting later that day with Mr. C., during which Ms. Elmore perceived that Mr. C. was threatening her. According to her amended complaint, after that meeting Ms. Elmore reported Mr. C's suspected abuse of his children to the Putnam County Sheriff's Department and Child Protective Services. Ms. Elmore alleged that on May 10, 2021, she filed a petition for an emergency domestic violence protective order against Mr. C. in the Magistrate Court of Putnam County. Ms. Elmore also alleged that, several months prior to these events, she had complained to Mr.

---

[3] In the amended complaint, Ms. Elmore identified this former co-worker by the first initial of his last name, and she continues to use this designation on appeal. As this appeal involves this individual's alleged abuse of children, we also use this designation rather than the individual's last name. *See* W. Va. R. App. P. 40(e)(1); *In re N.B.*, 251 W. Va. 154, 155 n.2, 909 S.E.2d 826, 827 n.2 (Ct. App. 2024).

Budd and Pastor McClung that the Youth Minister of MVBC was sexually harassing Ms. Elmore's thirteen-year-old daughter.

Respondents' subsequent pleadings acknowledged a portion of Ms. Elmore's allegations. Respondents admitted, in their answers to the amended complaint, that Ms. Elmore did contact the Putnam County Sheriff's Department and Child Protective Services, while denying the remaining allegations raised in the amended complaint.

Ms. Elmore raised five claims in her amended complaint. First, she alleged that MVBC unlawfully terminated her in retaliation for performing her legal obligations as a mandatory reporter of child abuse and neglect. Next, she claimed that her termination was motivated by gender discrimination in violation of the West Virginia Human Rights Act (the "WVHRA"). In support of this claim, Ms. Elmore alleged that her termination was motivated by retaliation for her complaints of sexual harassment against the MVBC youth minister. Third, Ms. Elmore claimed gender discrimination in violation of the WVHRA based on her allegedly lower pay compared to male ministers. Fourth, Ms. Elmore claimed her termination violated her constitutional right to free speech. In her final count, Ms. Elmore alleged that MVBC terminated her to retaliate against her for filing a petition for a domestic violence protective order against Mr. C.

On May 21, 2024, the respondents filed a motion to dismiss, or in the alternative, for summary judgment. Respondents asserted in a footnote that Ms. Elmore had not attached the domestic violence protective order to her complaint and that the petition had been denied as unsubstantiated. Ms. Elmore filed a response in opposition on July 22, 2024. On August 1, 2024, the circuit court entered an order denying respondents' motion to dismiss and declining to consider it as a motion for summary judgment. The order provided leave for respondents to file another dispositive motion. On April 4, 2025, respondents filed a renewed motion for summary judgment, together with a supporting memorandum of law. Respondents argued that each of Ms. Elmore's claims was barred by the protections for freedom of religion in Article III, § 15 of the West Virginia Constitution and the First Amendment to the United States Constitution. Ms. Elmore did not file a response to respondents' renewed motion for summary judgment. The circuit court held a hearing on the motion on May 20, 2025.

On June 2, 2025, the circuit court entered its order granting respondents' renewed motion for summary judgment. The circuit court determined that Ms. Elmore's claims were barred under the First Amendment by the "ministerial exception" to employment discrimination actions recognized by the Supreme Court of the United States (the "U.S. Supreme Court") in *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 188-90 (2012). The circuit court also found that her claims were barred under Syllabus Point 4 of *Gillespie v. Elkins Southern Baptist Church*, 177 W. Va. 88, 350 S.E.2d 715 (1986) because MVBC's congregation properly voted for her termination. It is from this order that Ms. Elmore now appeals.

Our appellate review of a circuit court's order granting summary judgment is de novo. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). Summary judgment is appropriate when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." W. Va. R. Civ. P. 56(a), in part. Similarly, our review of the circuit court's resolution of a constitutional issue is de novo. *See Mutter v. Ross*, 240 W. Va. 336, 339, 811 S.E.2d 866, 869 (2018).

On appeal, Ms. Elmore raises one broadly framed assignment of error: that the circuit court erred in granting respondents' renewed motion for summary judgment. She makes two primary arguments in support of this assignment of error: 1) that the circuit court erred by applying the "ministerial exception" recognized by the U.S. Supreme Court in *Hosanna-Tabor Evangelical Lutheran Church*; and 2) that under governing West Virginia caselaw her claims are not barred by respondents' constitutional right to freedom of religion. We address each argument in turn.

As recognized by the circuit court, in *Hosanna-Tabor* the U.S. Supreme Court found that the First Amendment clauses protecting freedom of religion create a "ministerial exception" that bars employment discrimination claims filed by religious leaders against religious institutions. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 188 (2012). The Court reasoned that "[r]equiring a church to accept or retain an unwanted minister, or punishing a church for failing to do so . . . interferes with the internal governance of the church, depriving the church of control over the selection of those who will personify its beliefs." *Id.* The Court held that this exception precludes a court from analyzing if a religious institution's given reason for an employment decision was pretextual:

> The purpose of the exception is not to safeguard a church's decision to fire a minister only when it is made for a religious reason. The exception instead ensures that the authority to select and control who will minister to the faithful—a matter "strictly ecclesiastical,"—is the church's alone.

*Id.* at 194-95 (citations omitted). The Court reiterated the existence of the ministerial exception in *Our Lady of Guadalupe School v. Morrissey-Berru*, while also providing guidance for courts determining whether a particular position falls within the exception. *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 751–56 (2020).

Ms. Elmore contends that the ministerial exception recognized in these cases is a "federal affirmative defense" that has never been adopted by the Supreme Court of Appeals of West Virginia ("SCAWV") and does not apply to her claims, which are all grounded in

5

state law.[4] She also suggests, albeit without citation to the record, that there is at least a factual question about whether her former position at MVBC falls within the ministerial exception as applied by federal courts. In contrast, respondents argue that the SCAWV has already recognized the constitutional principles behind the ministerial exception, and that Ms. Elmore's former position fits within that exception.

We find it unnecessary to resolve the parties' dispute over the extent to which the "ministerial exception" recognized by the U.S. Supreme Court bars Ms. Elmore's claims in this matter. As noted, the circuit court found that Ms. Elmore's claims stemming from her termination were also barred by respondents' constitutional right to freedom of religion under the SCAWV's decision in *Gillespie v. Elkins Southern Baptist Church*. While Ms. Elmore argues that the circuit court should have denied respondents' motion for summary judgment because her claims satisfy an exception recognized in *Gillespie*, she does not dispute that *Gillespie* applies. Because we find that *Gillespie* is dispositive of Ms. Elmore's claims, we decline to decide whether the ministerial exception, as set out by the U.S. Supreme Court, bars her claims.

The SCAWV has held that "[t]he power of the civil courts to interfere with the internal operations of churches is severely limited by the First Amendment to the Constitution of the United States as applied to the states by the Fourteenth Amendment, and by W.Va. Const. art. III, s 15." Syl. Pt. 1, in part, *Bd. of Church Extension v. Eads*, 159 W. Va. 943, 230 S.E.2d 911 (1976). Due to these constitutional protections for freedom of religion, "[i]n a wrongful discharge action by a terminated pastor, the courts cannot go beyond completely neutral principles of law to inquire into church doctrine or to determine if the termination was arbitrary." Syl. Pt. 3, *Gillespie v. Elkins S. Baptist Church*, 177 W. Va. 88, 350 S.E.2d 715 (1986). "In a congregational church the membership ultimately controls the business of the church and, without some compelling reason to do otherwise, this Court will limit its analysis in a pastor's wrongful discharge action to inquiring whether

---

[4] The precise scope of Ms. Elmore's argument on this point is unclear. However, to the extent Ms. Elmore argues that the protections of the First Amendment of the United States Constitution do not apply to state law claims, we note that the SCAWV has recognized that "[t]he establishment and free exercise clauses of the First Amendment are made applicable to the states through the Fourteenth Amendment." *New Vrindaban Cmty., Inc. v. Rose*, 187 W. Va. 410, 412 n.6, 419 S.E.2d 478, 480 n.6 (1992) (citing *Cantwell v. State of Connecticut*, 310 U.S. 296, 303 (1940)). To the extent she contends that the U.S. Supreme Court's interpretations of the United States Constitution are not binding on this Court, the SCAWV has explained that "the [U.S.] Supreme Court's interpretation of the First Amendment is binding on this Court through W. Va. Const. art. I, s 1." *Pushinsky v. W. Va. Bd. of L. Examiners*, 164 W. Va. 736, 744, 266 S.E.2d 444, 449 (1980).

the congregation met and whether it acted to terminate the pastor." *Id.*, 177 W. Va. at 90, 350 S.E.2d at 717, Syl. Pt. 4.[5]

Ms. Elmore does not dispute that the MVBC congregation met and voted to terminate her as Children's Minister, in compliance with all the procedural requirements for terminations set forth in Article VIII, Section 5.B of the MVBC Bylaws. Nor does Ms. Elmore contest that she was a "pastor" as the SCAWV used that term in *Gillespie*. Rather, she argues that there are two reasons her claims fall under an exception to *Gillespie*'s general prohibition against courts looking further than the congregation's vote. First, Ms. Elmore contends that in *Gillespie* the SCAWV "specifically left the door open for ministers to bring a *Harless* or other type of wrongful retaliatory discharge claim against a Church employer if there was a substantial violation of public policy." Ms. Elmore asserts that, unlike the petitioner in *Gillespie*, she has alleged that she was terminated in violation of a substantial public policy, and therefore she should be able to pursue a wrongful termination claim under *Harless v. First National Bank in Fairmont*, 162 W. Va. 116, 246 S.E.2d 270 (1978).[6]

Ms. Elmore misapprehends *Gillespie* on this point. While it is true that the SCAWV recognized that the *Gillespie* petitioner alleging wrongful discharge did not assert that his termination violated a substantial public policy, the Court further explained that it could not have addressed the merits of his claim even if he had:

> More importantly, however, analysis of [the petitioner's] claim under [*Harless*]. . . would require the civil courts to examine the reasons for the pastor's termination. Almost inevitably, this analysis would require the courts to go beyond completely neutral principles of law to inquire into church

[5] For purposes of the constitutional right to freedom of religion, West Virginia law recognizes two types of churches: 1) hierarchical churches, "where the local churches are connected with and subordinate to the laws, procedures and organs established by the constitution and bylaws of the general church"; and 2) congregational churches, "with authority vested in local congregations." *Eads*, 159 W. Va. at 943, 230 S.E.2d at 912, Syl. Pt. 1. The parties agree that MVBC is a congregational church.

[6] In *Harless*, the SCAWV held:

> The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge.

Syl., *Harless v. First Nat. Bank in Fairmont*, 162 W. Va. 116, 246 S.E.2d 270 (1978).

doctrine or to determine if the termination was arbitrary. This the courts cannot do.

*Gillespie*, 177 W. Va. at 91-92, 350 S.E.2d at 719. Therefore, Ms. Elmore's argument that the circuit court should have allowed her claims to proceed because she asserted that her termination violated a substantial public policy is meritless.

Ms. Elmore next contends that there was a "compelling reason" for the circuit court to look beyond the MVBC congregation's vote to terminate her, claiming respondents "colluded to fraudulently conceal material facts from the congregation when respondents asked them to vote on [Ms. Elmore]'s termination." Ms. Elmore points specifically to the Board of Deacons' statement recommending her termination, which Mr. Budd read to the MVBC congregation after the morning services on June 13, 2021, and June 20, 2021, and again at the June 27, 2021, special business meeting. Ms. Elmore claims that this statement concealed material facts related to her disagreements with other members of the staff because it did not explain to the congregation that she reported one of the other MVBC staff members for suspected child abuse and accused another of sexual harassment. Ms. Elmore argues that this alleged concealment was fraud or collusion and constitutes a compelling reason under *Gillespie* that the circuit court should have allowed her wrongful discharge claims to proceed on the merits.

We disagree. As an initial matter, Ms. Elmore cites no authority demonstrating that her belief that the explanation for her termination was pretextual constitutes a compelling reason the circuit court should have allowed her claims to proceed on the merits. Indeed, in asking the Court to find that the Board of Deacons concealed its reason for recommending her termination, Ms. Elmore necessarily asks the Court to decide the Board's true motivation.[7] This is exactly what *Gillespie* prohibits. *See Gillespie*, 177 W. Va. at 91-92, 350 S.E.2d at 719.

Moreover, Ms. Elmore does not cite to any evidence in the record, other than the statement itself, in support of her argument that the Board of Deacons' statement recommending her termination was fraudulent or collusive.[8] Article VIII, Section 5.B of

---

[7] We note that Ms. Elmore's arguments appear to be predicated on the belief that, to the extent a court were to reach the merits of her claims stemming from her termination, the dispositive inquiry would be the motivation of the Board of Deacons in recommending her termination, rather than the motivation of the congregation that effected the termination by voting. However, since we find that the circuit court did not err in determining that the MVBC congregation's vote to terminate Ms. Elmore was dispositive of her claims, we decline to address the validity of this assumption.

[8] Indeed, aside from a few sparse citations to the Board of Deacons' statement, the minutes of the June 27, 2021, special business meeting, and her amended complaint, Ms.

the MVBC Bylaws, which governs terminations, does not require the Board of Deacons to explain its reasons for recommending a termination or specify the level of detail necessary if the Board does so. Nor did the Board of Deacons represent that its statement was exhaustive; indeed, the Board noted in the statement that it had "not addressed particular issues or instances that occurred during [Ms. Elmore]'s employment." Therefore, Ms. Elmore fails to demonstrate that the Board's statement to the congregation was fraudulent or collusive.

Ms. Elmore has not demonstrated a compelling reason that the circuit court should have looked beyond the MVBC congregation's vote to terminate her as Children's Minister. Therefore, we find no error in the circuit court's order granting respondents' motion for summary judgment on each of Ms. Elmore's claims.[9] Accordingly, we affirm the circuit court's June 2, 2025, order granting respondents' renewed motion for summary judgment.

Affirmed.

**ISSUED:** May 27, 2026

**CONCURRED IN BY:**

Judge Charles O. Lorensen
Judge S. Ryan White

**CONCURRING AND WRITING SEPARATELY:**

Chief Judge Daniel W. Greear

---

Elmore's brief does not cite the record. We remind litigants that under Rule 10(c)(4) of the Rules of Appellate Procedure, the statement of the case must be "[s]upported by appropriate and specific references to the appendix or designated record." Rule 10(c)(7) similarly provides that "[t]he argument must contain appropriate and specific citations to the record on appeal, . . . . The Intermediate Court . . . may disregard errors that are not adequately supported by specific references to the record on appeal."

[9] While *Gillespie* specifically addressed wrongful discharge claims, Ms. Elmore also alleged a claim of gender discrimination against respondents based on allegedly unequal pay compared to similar male ministers. The circuit court found this claim was also barred by respondents' constitutional right to freedom of religion under *Gillespie*. Ms. Elmore does not argue on appeal that her pay disparity claim is exempt from the *Gillespie* analysis or that this claim should survive even if the claims stemming from her termination are barred. Accordingly, we find no error in the circuit court's order granting respondents' motion for summary judgment on Ms. Elmore's pay disparity claim.

GREEAR, Chief Judge, concurring:

I fully concur with the majority's decision holding that Ms. Elmore's claims are barred. I write separately because I would resolve this case under the "ministerial exception" recognized in *Hosanna-Tabor Evangelical Lutheran Church & School v. E.E.O.C.*, 565 U.S. 171 (2012).

The majority concludes that Ms. Elmore did not demonstrate a "compelling reason" sufficient to warrant judicial interference with the internal operations of MVBC under *Gillespie v. Elkins Southern Baptist Church*, 177 W. Va. 88, 350 S.E.2d 715 (1986). I agree that Ms. Elmore has made no such showing, but I would not rest the decision on that basis.

In *Hosanna-Tabor*, decided after *Gillespie*, the United States Supreme Court held that the First Amendment forecloses judicial review where the claims at issue involve an "employment relationship between a religious institution and its minister." 565 U.S. at 188. *See also Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 746 (2020) (explaining that religious institutions are afforded "autonomy with respect to internal management decisions that are essential to the institution's central mission. And a component of this autonomy is the selection of the individuals who play certain key roles."). The ministerial exception provides no basis for courts to depart from this general prohibition.[1]

To the contrary, once it is determined that a claim involves an employment dispute between a religious institution and "an employee [who] qualifies as a minister," *Hosanna-Tabor*, 565 U.S. at 190, the First Amendment commands courts to abstain from further analysis. *See Our Lady of Guadalupe*, 591 U.S. at 746 ("Under this rule, courts are bound to stay out of employment disputes involving those holding certain important positions with churches and other religious institutions."); *see also Billard v. Charlotte Cath. High Sch.*, 101 F.4th 316, 333 (4th Cir. 2024) (noting, "when the [ministerial] exception does apply, it unambiguously commands that we 'stay out.'") (quotation omitted).

A rule that authorizes judicial intervention upon a sufficiently compelling justification necessarily invites courts to consider the reasons underlying a religious institution's decision to hire, fire, or otherwise alter the terms and conditions of employment of its ministers, an analysis which the First Amendment precisely forbids. Thus, to the extent *Gillespie* suggests that courts may interfere with the employment relationship between a religious institution and individuals performing ministerial

---

[1] This is provided that religious institutions attempting to invoke the ministerial exception timely assert and demonstrate application of the affirmative defense. *See Hosanna-Tabor*, 565 U.S. at 195 n.4 (explaining that the ministerial exception is "an affirmative defense . . ., not a jurisdictional bar.").

functions upon a showing of a "compelling reason," it cannot be reconciled with controlling federal precedent.[2] Here, where the claims arise from an employment relationship with a religious institution in a ministerial capacity, federal law controls and does not permit judicial inquiry into the reasons for the employment decisions.

Applying the federal framework here, the result is straightforward. Ms. Elmore claims that she was unlawfully terminated and compensated in her capacity as a children's minister. To be sure, the amended complaint alleges that she worked for MVBC as a "Children's Minister and/or Sunday School teacher." Although her job title is not dispositive, it is relevant. *See Hosanna-Tabor*, 565 U.S. at 190-91 (declining to "adopt a rigid formula for deciding when an employee qualifies as a minister" and instead considering four factors, including the plaintiff's title). While the complaint does not specify and the evidence does not establish whether Ms. Elmore had any religious training, a factor considered in *Hosanna-Tabor*, her job title in combination with her self-described duties, which included preparing for Sunday school, the children's message, and kids' worship, undeniably support application of the ministerial exception. *See Our Lady of Guadalupe*, 591 U.S. at 753 (clarifying that the factors considered in *Hosanna-Tabor* were "not inflexible requirements and may have far less significance in some cases" and instructing that "[w]hat matters, at bottom, is what an employee does.").

Accordingly, the ministerial exception applies and prohibited the circuit court from adjudicating Ms. Elmore's claims. No further inquiry was permitted.

For these reasons, I concur in the decision affirming the circuit court's order.

---

[2] Although *Gillespie* pre-dated *Hosanna-Tabor*, the decision like the instant case involved claims challenging the termination of a pastor. Thus, in that context, *Hosanna-Tabor* now provides the governing rule. If, however, *Gillespie* reflects broader principles of church autonomy, this concurrence should not be read to disturb those principles.